Louis H. LEVINE;  Robert E. Asher,
Plaintiffs–Appellants,

v.

DIAMANTHUSET, INC., Defendant,

and

Security Pacific National Bank;  Wilmington Trust Company;  Bank of Delaware, Defendants–Appellees.

No. 89–15790.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 19, 1990.

Decided Dec. 19, 1991.

Elizabeth Joan Cabraser, Daniel C. Girard, and Karen E. Karpen, Lieff, Cabraser & Heimann, San Francisco, Cal., for plaintiffs-appellants.

Robert Cross, and Michael Stokes, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for defendant-appellee Security Pacific.

Walter Allan, James Kirkham, and Ellyn Freed, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant-appellee Wilmington Trust Co.

Before TANG and NOONAN, Circuit Judges, and HATTER *, District Judge.

TANG, Circuit Judge:

Lewis Levine and others ("Levine") brought a class action for purported violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (collectively "Rule 10b–5"), as well as other federal and state laws. The complaint named the following defendants: Diamanthuset, a corporation to which we will refer by its more recent name, "Investia"; various individuals associated with Investia; the Wilmington Trust Company ("Wilmington") and the Bank of Delaware, both Delaware corporations; and Security Pacific National Bank ("Security Pacific"), a California corporation. The two Delaware corporations and Security Pacific eventually moved to dismiss the claims against them for failure to state a cause of action. The district court granted the motion, 722 F.Supp. 579 (N.D.Cal.1989), and subsequently entered judgment as to these defendants pursuant to Fed.R.Civ.P. 54(b). Having settled with the Bank of Delaware, Levine now appeals the dismissal of the Rule 10b–5 claims against Wilmington and Security Pacific. We reverse and remand for further proceedings.

I

Levine alleged the following: Beginning in June 1979, Investia marketed to the public a guaranteed return on an investment in diamonds. Investia offered a contract linking a purchase by the investor of diamonds represented to have a certain value with an undertaking on the part of Investia to obtain for the investor a subsequent buyer who would pay a higher price for the diamonds. Investia designed its representations to deceive investors into believing that their principal investment was secured by diamonds with a fair market value equivalent to what was paid by the investor. Investia's sales pitch also led prospective investors to believe that an independent third party would serve as a depository for the investor, acknowledging the receipt of diamonds having the value indicated and certifying the value to the investor. Furthermore, Investia stated that it would advance the amount of guaranteed appreciation in the diamonds' value to an account with an independent bank where it would be held in trust for the investor.

The diamonds sold by Investia were small diamonds, known in the jewelry trade as melee, with a weight of seven to fourteen percent of one carat. Investia highly overvalued the diamonds by regularly reporting to investors that the diamonds' value had appreciated after the purchase, when in fact no appreciation had occurred.

Investia persuaded investors to have the diamonds they purchased shipped to a depository in Delaware. Wilmington began service as a depository for Investia in December 1984. After an investor had purchased diamonds from Investia they were packed in a "cassette" that was then sealed and shipped to Wilmington, which would acknowledge receipt of a cassette in the following terms:

Dear _____:

Investia has recently deposited the cassettes listed on the attached sheet having the indicated insured value with our precious metals depository, subject to its order.

---

* The Honorable Terry J. Hatter, United States District Judge for the Central District of California, sitting by designation.

Investia has indicated these cassettes were acquired on your behalf and has requested we send you this advice.

These letters were signed by a banking officer in the precious metals division of Wilmington and, pursuant to agreement with Investia, mailed directly to the investors.

Wilmington's involvement was a material factor in the investment decision of virtually all class members. Indeed, Levine claims the trust company's participation "was crucial to Defendants' plan to deceive investors regarding the value of the diamonds." Complaint at 24–25. Wilmington's acknowledgments stating the insured value of the diamonds constituted a representation that the diamonds had the value stated and were insured for that value. The trust company failed to indicate that it had made no independent evaluation of the diamonds, and omitted other material facts bearing on its responsibility for the diamonds, such as the nature of the indicated insurance.[1]

Wilmington's actions facilitated the fraudulent sale of securities by Investia in part because potential purchasers would check with current investors, whose names were provided by Investia. Current investors would confirm the representations of the trust company, including the issuance of the acknowledgments. Wilmington also served as a reference for Investia by appearing in Investia's written promotional materials and by responding to the telephone inquiries of potential investors. The effect was to deceive potential investors into believing that Wilmington had certified the value of the diamonds contained in the cassettes and was otherwise acting as trustee for the benefit of the investors. Furthermore, the deceptive nature of

Investia's scheme was evident to Wilmington, in part because of the ever-increasing value of the diamonds. Wilmington had an independent interest in examining these values because its storage fee was based on a percentage of the diamond's value as declared by Investia.[2]

Security Pacific's involvement in the Investia scheme was somewhat different. As part of its offering, Investia represented to investors that a Reserve Account would be created in an amount equal to twenty-five percent of each investment. This fund would be available to the investors in the event that Investia was unable to effect liquidation of their respective accounts. In promotional literature, Investia stated: "We totally secure your return through funds deposited in a bank trust account. So your profits are protected." Complaint at 26.

Each client's Reserve Account was part of an account opened by Investia with Security Pacific. The sole signatory on the account was Investia, and Investia alone was responsible for determining the amount of any client's reserve. In its deposit agreement with Investia, Security Pacific assumed no trust responsibilities. The contract provided that Security Pacific would distribute principal and income as directed by Investia.

Once an investor bought into the scheme, Investia would issue a "Client Reserve Certificate." This certificate misrepresented Investia's deposit agreement with Security Pacific by indicating that the funds in the client's Reserve Account, exclusive of interest and appreciation, would be distributed to the client in the event of Investia's insolvency. The implications of the Client Reserve Certificate were that the funds in the

1. Wilmington indicates on appeal that the diamonds could be insured for no more than their actual value. Appellee Wilmington Trust Company's Brief at 27–28. Yet, according to Levine, the confirmations issued by the trust company indicated inflated "insured" values.

2. Levine premises Wilmington's Rule 10b–5 liability in part on the trust company's failure to disclose to investors the basis on which Investia compensated the trust company for its services. Wilmington responds that investors were in-

formed of the means by which Wilmington was compensated. Wilmington's response, however, is based on evidence not in the record. Because Levine makes a plausible argument that the evidence does not support the trust company's position, Appellants' Reply at 18 n. 9, we decline Wilmington's invitation to supplement the record on appeal. *See Karmun v. Commissioner,* 749 F.2d 567, 570 (9th Cir.1984), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 53 (1985).

Reserve Account were being held by Security Pacific as trustee with an obligation to the investors upon the occurrence of specified events. The Reserve Account and the Client Reserve Certificates were designed to deceive investors into believing that the appreciation guaranteed to them by Investia had been paid to Security Pacific to be held in trust.

Various individuals who were considering investing contacted officers of Security Pacific to verify the status of the Reserve Account and confirm the role of Security Pacific as provided in Investia's promotional materials. Officers of Security Pacific assented to or made no objection to the portrayal of Security Pacific's role contained in the promotional materials. Furthermore, Security Pacific continued its participation even after newspaper articles, in which bank officials were interviewed concerning Investia, disclosed inconsistencies between the representations made in the Client Reserve Certificate and the actual terms of Investia's deposit agreement with Security Pacific. Upon Investia's demise, these inconsistencies became evident when investors failed to receive disbursements from the Reserve Account.

According to Levine, Security Pacific was "a necessary and substantial participant in the Investia Scheme, with a pervasive presence in the offering." Complaint at 35. It served as a reference for Investia prior to sale. It permitted the defendants to issue a prospectus which was materially misleading in relation to the relative rights of Security Pacific, Investia, and the investor. The bank also provided financing and other banking services to Investia and its officers and lent credibility to Investia's sales offers.

Based on the foregoing allegations, Levine charges that Wilmington and Security Pacific were both principals and aiders and abettors of Investia's securities fraud.

## II

In dismissing the Rule 10b–5 claims against Wilmington and Security Pacific, the district court held that neither Wilmington's "written confirmation" nor the Client Reserve Certificate referring to Investia's Reserve Account at Security Pacific were securities. 722 F.Supp. at 584–85. The district court also suggested as an alternative ground for dismissal Levine's inability to show that Wilmington's and Security Pacific's alleged wrongdoing was "in connection with a purchase or sale of a security." *Id.* at 584. The court, however, did not elaborate on this alternative basis for its ruling, except to say that Security Pacific's "titular inclusion in [the] Client Reserve Certificate[s] [issued by Investia] does not establish that the Bank engaged in the purchase or sale of securities." *Id.* at 585. Nevertheless, on appeal the parties argue the absence of a "connection" between Investia's scheme and the activities of Wilmington and Security Pacific as an alternative ground on which to affirm the district court. *See Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986) (permitting affirmance of district court on any basis supported in the record). The parties also contest a point not discussed by the district court: whether Levine's allegations are sufficient to make out a claim for aiding and abetting violations of Rule 10b–5.

## III

Dismissal for failure to state a claim is reviewed de novo. *Guillory v. County of Orange,* 731 F.2d 1379, 1381 (9th Cir.1984). Review is limited, however, to the contents of the complaint. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir.1983). All factual allegations are to be taken as true and construed in the light most favorable to the non-moving party. *Id.* at 580. Dismissal of an action pursuant to Fed.R.Civ.P. 12(b)(6) is proper only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).

Under section 10(b) of the Securities Exchange Act of 1934 it is unlawful "[t]o use or employ, in connection with the pur-

chase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate." 15 U.S.C. § 78j. The Commission's Rule 10b–5 makes it unlawful

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. The existence and involvement of a "security" is a necessary prerequisite to a Rule 10b–5 violation.

The district court concluded that neither Wilmington nor Security Pacific could be held liable for federal securities law violations in part because neither the acknowledgments issued by Wilmington nor the Reserve Certificates referring to Investia's bank account with Security Pacific constitutes a security within the meaning of federal law. We need not review these decisions because Levine does not challenge them on appeal. Rather, Levine contends he has alleged primary and secondary Rule 10b–5 violations against Wilmington and Security Pacific based on Investia's issuance of securities in the form of an offer of diamonds coupled with the promise to find a future buyer.

For purposes of this appeal, we will assume to be true Levine's allegation that Investia's offer constituted a security within the meaning of federal securities law. We are thus presented with the following questions: First, can either Wilmington or Security Pacific be found liable for aiding and abetting violations of Rule 10b–5? Second, did the alleged involvement of Wilmington or Security Pacific with Investia's diamond offer occur "in connection with the purchase or sale of any security" such that Levine has stated claims for primary violations of Rule 10b–5?

## A. Aiding and Abetting Liability

■ To state a claim of aiding and abetting securities fraud, one must plead (1) the existence of an independent primary wrong, (2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and of his or her role in furthering it, and (3) substantial assistance in the wrong. *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 652 (9th Cir.1988) (per curiam) (setting forth three elements), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188–89 (9th Cir.1987) (including reckless conduct as a basis for aiding and abetting liability under Rule 10b–5); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1312 (9th Cir. 1982) (same). The parties do not contest the sufficiency of the allegations concerning Investia's primary violations of Rule 10b–5, nor do we have cause to question the pleadings in this regard. Instead, the dispute centers on the sufficiency of the allegations regarding the second and third elements of aiding and abetting liability.

### 1. *Wilmington as Aider and Abettor*

■ Regarding Wilmington's knowledge or recklessness, Levine charges that Investia's fraud must have been "readily apparent" to Wilmington by virtue of the fact that Wilmington's confirmations "reflected ever increasing values arbitrarily attributed by INVESTIA to the diamonds." Complaint at 25. When viewed in light of Levine's allegations that Wilmington's compensation was based on the value of the diamonds declared by Investia, and that Investia contracted with Wilmington to have the latter disclose the "ever increasing values" to third parties, we conclude there are facts that Levine might prove to show, at least, Wilmington's reckless disregard of Investia's Rule 10b–5 violations, and Wilmington's involvement therein. *Cf. First Trust & Sav. Bank v. Fidelity–Philadelphia Trust Co.*, 214 F.2d 320, 322, 326 (3d Cir.) (emphasizing, in case holding that

trust company did not warrant the genuineness of documents left with it for safekeeping, that the trust company's nominal service charge for the bailment was "barely sufficient to cover its expenses in connection therewith"), *cert. denied,* 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 674 (1954). Under the circumstances, it may well have been reckless—that is, highly unreasonable and constituting an extreme departure from standards of ordinary care—for Wilmington not to look a gift horse in the mouth when the reputation of the company's business was at stake. *See Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569–70 (9th Cir.1990) (en banc) (defining recklessness for purposes of Rule 10b–5), *cert. denied,* — U.S. —, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).[3]

As to the third element of an aiding and abetting claim, Levine has alleged that Wilmington rendered substantial assistance to Investia's violations of Rule 10b–5. This contention is supported by allegations that Wilmington allowed its name to be used by Investia in its promotional materials, that the trust company accepted telephone inquiries regarding Investia, and especially that Wilmington issued confirmations to investors which deceptively repeated the value of the diamonds originally attributed to them by Investia. This last contention is particularly important to pleading a secondary violation of Rule 10b–5, not necessarily because the alleged assistance aided Investia in retaining investors, but because prospective investors are alleged to have relied on the description of Investia's offering rendered by participating investors. A prominent portion of those descriptions recounted the involvement of Wilmington in the Investia scheme, including the issuance of the confirmations. On the whole, we conclude that Levine has sufficiently alleged an aiding and abetting violation of Rule 10b–5 against Wilmington. *Cf. Roberts,* 857 F.2d at 653 (indicating that accountant's knowledge of alleged Rule 10b–5 violation coupled with accountant's permission for primary violator to use accountant's name in offering memoranda stated cause of action for secondary liability under Rule 10b–5).[4]

2. *Security Pacific as Aider and Abettor*

■ Levine alleges that Security Pacific, "with knowledge such representations were false," permitted Investia to issue promotional materials and Client Reserve Certificates "which were materially misleading in relation to the relative rights of SECURITY PACIFIC, INVESTIA and the investor, under circumstances designed to lead the investor to believe that SECURITY PACIFIC was acting as a trustee for the investor's benefit." Complaint at 35–36.

3. Wilmington argues it could not have discovered the fraud because it was legally obligated to leave the diamond cassettes intact. However, this argument does not address the allegation that Wilmington, with knowledge of the ever-increasing values attributed to the diamonds by Investia, still decided to issue confirmations that might be misunderstood by investors.

4. The district court did not consider Wilmington's duty to disclose; we do not discuss the issue because Wilmington's aiding and abetting liability is premised in part not on silence, but on actual misrepresentations. *Cf. Roberts,* 857 F.2d at 652–53 (discussing prerequisites for aiding and abetting liability based on silence and inaction of alleged aider and abettor); *Woodward v. Metro Bank,* 522 F.2d 84, 96–97 (5th Cir.1975) (same). Unless Levine proves Wilmington had actual knowledge of Investia's Rule 10b–5 violations, it may be necessary to revisit the question of Wilmington's duty to disclose if aiding and abetting liability is ultimately to be premised only on the appearance of Wilmington's name in Investia's promotional materials. *See Roberts,* 857 F.2d at 653 (discussing alleged aider and abettor's duty when liability premised only on "the use of its name in offering memoranda"); *Woodward,* 522 F.2d at 97 ("When it is impossible to find any duty of disclosure, an alleged aider-abettor should be found liable only if scienter of the high 'conscious intent' variety can be proved. Where some special duty of disclosure exists, then liability should be possible with a lesser degree of scienter.") (footnote omitted); *see also Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1045 n. 7 (11th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). *But see Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799 (3d Cir.) (indicating knowledge requirement less strictly applied when aider and abettor derived benefits from the wrongdoing), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

In support of this contention, Levine also alleges that Security Pacific and Investia considered amending their deposit agreement to conform it to representations made in the Reserve Certificates. Levine further contends that a newspaper article based on interviews with Security Pacific officers informed the bank of discrepancies between the two documents. Yet, despite this knowledge, Security Pacific permitted Investia to associate the bank's name with misrepresentations of the Reserve Account. The bank provided further assistance in aid of Investia's Rule 10b–5 violations by sending an officer to attend Investia seminars, by coordinating with Investia the handling of investor inquiries, and by representing to prospective investors that it knew of no reason not to participate in the Investia scheme although it was aware of misrepresentations of material fact.

From the foregoing, it is abundantly clear that Levine has stated a cause of action against Security Pacific. Specifically, it appears to us that Levine could prove facts indicating Security Pacific's reckless disregard, if not actual knowledge, of both Investia's Rule 10b–5 violations and the bank's role in the violations, together with the provision of substantial assistance by the bank in the violations. *Cf. Roberts*, 857 F.2d at 653.[5]

The allegations in the present case are thus distinguishable from the facts in *Schneberger v. Wheeler*, 859 F.2d 1477 (11th Cir.1988), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2433, 104 L.Ed.2d 989 (1989), wherein the Eleventh Circuit concluded plaintiffs had failed to establish liability against a bank for aiding and abetting Rule 10b–5 violations. *Id.* at 1480–81. Unlike

the case at bar, the bank in *Schneberger* had no contact with prospective investors, *id.* at 1479, and was unaware of any misrepresentations or omissions made by its client to investors. *See id.* at 1480–81. The bank only knew that its client's financial condition was weak, and that loans made by the bank to its client would make investments in the client more attractive. *Id.* On these facts, the court concluded that the bank lacked any knowledge of fraud. *Id.* at 1481. Levine's allegations, however, cast Security Pacific in a much more active role within Investia's scheme.

### B. Primary Liability

■ Three elements must be pleaded and proved in 10b–5 actions: " '(1) conduct by the defendants proscribed by the rule; (2) a purchase or sale of securities "in connection with" such proscribed conduct; and (3) resultant damages to the plaintiffs.' " *Woodward v. Metro Bank*, 522 F.2d 84, 93 (5th Cir.1975) (quoting *Sargent v. Genesco, Inc.*, 492 F.2d 750, 759 (5th Cir.1974)); *see also SEC v. Rogers*, 790 F.2d 1450, 1458 (9th Cir.1986).[6]

■ The "in connection with" language contained in section 10b and rule 10b–5 requires something more than any fraud tangentially related to a securities transaction. To show a Rule 10b–5 violation, a private plaintiff must prove a "causal connection between a defendant's misrepresentation and [the] plaintiff's injury." *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 979, 99 L.Ed.2d 194 (1988); *accord Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 650 (9th Cir.1988) (per

---

**5.** The district court also did not consider Security Pacific's duty to disclose. We do not discuss the issue because, as with Wilmington, Security Pacific's aiding and abetting liability is premised in part not on silence, but on actual misrepresentations. *Cf. Roberts*, 857 F.2d at 652–53. We note, in any event, that Levine's allegations of Security Pacific's actual knowledge of Investia's Rule 10b–5 violations sufficiently state a duty to disclose in the context of aiding and abetting liability. *See id.*

**6.** While a defendant's duty to disclose is frequently discussed as an element in Rule 10b–5 cases, we find no need to do so here because the

district court did not reach that issue, and because Levine's allegations are premised in part on active misrepresentations rather than on silence. *Cf. Chiarella v. United States*, 445 U.S. 222, 227–28, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980) ("At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so."); *id.* at 232–33, 100 S.Ct. at 1116–17 (applying same rule in context of Rule 10b–5 liability).

curiam), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989); *see also SEC v. Clark,* 915 F.2d 439, 449 (9th Cir. 1990).[7] The private plaintiff must also prove a proximate relationship between the plaintiff's injury and the purchase or sale of a security. *See Roberts,* 857 F.2d at 650. Furthermore, a plaintiff must establish a connection between the defendant's alleged misrepresentation and the security at issue. *See Jett v. Sunderman,* 840 F.2d 1487, 1494 (9th Cir.1988); *Elias v. Arthur Andersen & Co. (In re Fin. Corp. of Am. Shareholder Litig.),* 796 F.2d 1126, 1130 (9th Cir.1986) (*"In re FCA "*). The three parts of the "in connection with" requirement thus represent three lines with which one might form a triangle. Only if each of the three lines are of sufficient length to bridge the distances between three points—identified by (A) a defendant's material misrepresentation or omission, (B) a plaintiff's injury, and (C) a security—will a Rule 10b–5 cause of action be pleaded and proved. *Cf. id.* at 1130 n. 4 (noting Third Circuit's four factor test for assessing "in connection with" requirement).

**7.** This requirement, in turn, breaks down into two sub-elements: transaction causation (i.e., "that the violations in question caused the plaintiff to engage in the transaction"), and loss causation (i.e., "that the misrepresentations or omissions caused the harm"). *Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767, 773 (9th Cir.1984); *see Elias v. Arthur Andersen & Co. (In re Fin. Corp. of Am. Shareholder Litig.),* 796 F.2d 1126, 1130 (9th Cir.1986). In a Rule 10b–5 action, a private plaintiff usually must prove both sub-elements. *See id.; see also Securities Investor Protection Corp. v. Vigman,* 908 F.2d 1461, 1467 (9th Cir.1990), *cert. granted on other grounds sub nom. Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, 111 S.Ct. 1618, 113 L.Ed.2d 716 (1991) (for questions presented in petition for certiorari, see 59 U.S.L.W. 3425 (Dec. 11, 1990)); *Casella v. Webb,* 883 F.2d 805, 808 n. 8 (9th Cir.1989). It has been said, however, that a plaintiff need not prove loss causation "where the evil is not the price the investor paid for a security, but the broker's fraudulent inducement of the investor to purchase the security." *Hatrock,* 750 F.2d at 773. Levine urges that we apply this exception here. We decline to do so because the exception appears capable of swallowing the rule. We therefore view the *Hatrock* exception as limited to the facts of that case, which involved churning of trading accounts by brokers.

**8.** At one point during a hearing on defendants' motion to dismiss, the district court indicated

### 1. *From Point A to Point B: Connecting Defendants' Misrepresentations to Plaintiffs' Injuries*

Regarding the first leg of the triangle, Levine's allegations are sufficient to survive a motion to dismiss.

### a. *Wilmington*

■■■ Levine has pleaded that Wilmington's acknowledgments contained material misrepresentations and omissions that perpetuated Investia's fraud. For example, Levine alleges that investors regarded Wilmington's representations of the diamonds' insured value as accurate indications of the diamonds' actual worth. In turn, investor confidence inspired by such representations is alleged to have played a material role in attracting new investors. Even apart from the additional allegations concerning Wilmington's acceptance of telephone inquiries and its appearance in promotional material, we find the allegations sufficient to show transaction causation.[8] Furthermore, in

"it's very clear ... that a reasonable person reading [Wilmington's confirmation] would have no reason to believe Wilmington Trust ... was in any way [verifying] the amount or the value of [the diamonds]." Reporter's Transcript of Oct. 31, 1988, at 21. We disagree. Wilmington appears to have been more than a messenger for Investia. Instead, Levine's allegations indicate the trust company saw fit to associate its business reputation with the content of messages delivered directly to investors. Furthermore, by stating the "insured value" of the diamonds, Wilmington may have represented that its own potential liability to investors was covered, and that this liability could extend to the full amount indicated on the confirmation. Such an admission against interest reasonably may have been perceived as a statement by Wilmington of the diamonds' actual value. The possibility that investors knew Wilmington could not open the diamond cassettes does not change this perception or its reasonableness.

Thus, given the generous standard of review applied to a dismissal for failure to state a claim, we are unable to say with assurance that Levine could not prove Wilmington's confirmation to be misleading. We therefore consider the "in connection with" requirement. *Cf. Hollinger,* 914 F.2d at 1570 n. 12 (disagreeing with district court's assessment of materiality, thereby prompting a decision on requisite scienter).

view of Wilmington's prominent reputation, the trust company's working relationship with Investia, and Investia's encouragement of prospective investors to contact those who had already invested, the damages allegedly suffered by Levine were at least "a reasonably foreseeable result of the misleading statement" so as to demonstrate loss causation. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985) (quotations omitted).

### b. Security Pacific

■ Levine has alleged that, while Security Pacific was aware of material discrepancies between the Reserve Certificates and the deposit agreement, the bank nevertheless responded to the inquiries of prospective investors by stating that it knew of no reason not to participate in the Investia program. These statements were made as part of Security Pacific's allegedly prominent role in the Investia scheme. We therefore have little doubt that Levine's allegations demonstrate transaction causation. Additionally, the failure of the Reserve Account to perform its represented function upon Investia's demise evidences loss causation.

### 2. *From Point B to Point C: Connecting Plaintiffs' Injuries to a Security*

■ Regarding the second leg of the "in connection with" requirement, we note initially that this case involves plaintiffs who actually bought into Investia's scheme. *Cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (holding that Rule 10b–5 plaintiffs must be actual purchasers or sellers of securities). In addition to the requirement of an actual purchase or sale (or contract therefor), we have also said that conduct actionable under Rule 10b–5 must occur before investors purchase the securities, if—as here—they allege the fraud induced them to make the

purchase. *See Roberts*, 857 F.2d at 651; *see also Lewelling v. First Cal. Co.*, 564 F.2d 1277, 1279–80 (9th Cir.1977); *Williams v. Sinclair*, 529 F.2d 1383, 1389 (9th Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).

■ Thus, to the extent Wilmington's and Security Pacific's liability under Rule 10b–5 is premised on the confirmations and the Reserve Certificates, respectively, early investors will not be able to recover because Levine's allegations indicate these documents were not issued until after the purchase of Investia's securities.[9] Only after Investia began referring prospective investors to those who had already chosen to participate could liability for misrepresentations and omissions in these documents arise. Nevertheless, under the circumstances present here, this is enough to avoid dismissal for failure to state a claim. We will inquire further, however, to determine whether there are pre-purchase misrepresentations or omissions for which the entire class of Investia investors could recover.

### a. Wilmington

In addition to the trust company's confirmations, Levine alleges that Wilmington accepted telephone inquiries regarding the Investia scheme. Although Levine does not detail the nature of these inquiries or Wilmington's response, we believe he may yet plead and prove facts in regard to these inquiries on which recovery may be had.

Levine also alleges that Wilmington permitted Investia to use its name and a photograph of the trust company's facility in Investia promotional materials, and that Investia told prospective investors that Wilmington would issue confirmations after investments were made. Because none of these statements appear to involve material misrepresentations or omissions, they are better addressed in the context of aiding and abetting liability.

---

**9.** Levine could still plead and prove facts showing that the purchase of the Investia securities was not consummated at the time the confirmation was received from Wilmington. *Cf. Lewell-*

*ing*, 564 F.2d at 1279–80. However, Levine's complaint as alleged contains few, if any, facts in support of this conclusion.

## b. Security Pacific

Levine's allegations concerning misrepresentations and omissions made by Security Pacific extend beyond the four corners of the Reserve Certificates. One of the most egregious allegations concerns Security Pacific's responses to telephone inquiries by prospective investors. Levine contends that, pursuant to arrangements with Investia, and with awareness of material inconsistencies between the Reserve Certificate and the deposit agreement, Security Pacific told prospective investors that the bank knew of no reason not to buy into the Investia program. Other allegations of pre-purchase misrepresentations and omissions by Security Pacific may also suffice as bases on which to premise primary Rule 10b–5 liability.[10] On the whole, Security Pacific did not simply act after the securities were purchased, but before purchase as well. The bank's conduct is therefore actionable under Rule 10b–5.

### 3. *From Point C back to Point A: Connecting a Security to Defendants' Misrepresentations*

■ The third leg of the "in connection with" requirement tests whether a defendant's alleged misrepresentations are sufficiently proximate to the purchase or sale of the security in question. This circuit's leading cases are discussed in *Jett v. Sunderman*, 840 F.2d 1487 (9th Cir.1988), where we observed that, while a

> broker's misrepresentations about the risks involved in purchasing securities through a margin account were made "in connection with" the sale of securities[,]
> . . .
> . . . an auditor's advice concerning [a plaintiff's] accounting treatment of certain securities which were subsequently purchased by the plaintiff was not given

"in connection with" the purchase of the securities.

*Id.* at 1494 (discussing *Arrington v. Merrill Lynch, Pierce, Fenner & Smith*, 651 F.2d 615 (9th Cir.1981) (margin account), and *In re FCA*, 796 F.2d 1126 (9th Cir. 1986) (accounting treatment)).

In the present case, Wilmington's confirmation and Security Pacific's Reserve Certificate were both integral components of the investment product marketed by Investia. This fact stands in stark contrast to the accounting advice offered in *In re FCA*, which had "nothing to do with the intrinsic nature" of the securities at issue in that case. 796 F.2d at 1130. Thus we believe Levine has pleaded sufficient proximity between defendants' alleged misrepresentations and Investia's securities.

### 4. *Conclusion*

Taking Levine's allegations as true, he has alleged both transactional causation and loss causation, as well as sufficient connections between the alleged damages and the purchase or sale of a security, and between the security at issue and the defendants' alleged misrepresentations. The triangle is complete.[11] The complaint is sufficiently pleaded as to the "in connection with" requirement for primary liability under Rule 10b–5.

### IV

Whether Levine will prevail on his causes of action, or whether he can survive a motion for summary judgment, are questions to be determined by the district court. In light of the content of the complaint, however, the district court prematurely dismissed the action. Accordingly, the judgment is reversed, and the case remanded

---

**10.** As with Wilmington, many of Levine's allegations concerning Security Pacific may be better addressed in the context of aiding and abetting liability. For example, it is unclear whether there are any material misrepresentations or omissions directly attributable to Security Pacific among the allegations that investors were informed by Investia that a trust fund would be opened in their name at Security Pacific, that at

least one representative from Security Pacific attended Investia sales seminars, and that Investia listed the bank as a reference.

**11.** Curiously, Levine's allegations regarding the disappearance of investors' monies include reference to a Bermuda corporation.

for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

NOONAN, Circuit Judge, dissenting:

Investors, deluded by diamonds, were the victims of a fraud that played upon their gullibility. The defrauder is apparently unable to make good their losses, and so the investors have turned to the deep pockets of innocent bystanders as a way of recouping. The district court sensibly dismissed their suit. This court, relying on possible, and to my mind strained, interpretations of the complaint, reinstates it. But the court does so not taking into account the cardinal rule that when a complaint has documents annexed the documents qualify and control the allegations. *Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir.1987). Read together, complaint and attached documents establish that Levine's complaint is groundless.

In his complaint, Levine's first theory was that the confirmation issued by the depository of the diamonds was actually a security or a prospectus within the meaning of the Securities Act and that the Reserve Certificates issued by Investia were either a security or a prospectus. This theory borders on the fantastic and has not been pressed upon this court. The notice of receipt issued by Wilmington was neither a certificate of interest nor a participation in a profit-sharing arrangement nor an evidence of indebtedness nor a certificate of deposit. It was not a prospectus, and it was not a security. *See Danner v. Himmelfarb*, 858 F.2d 515, 518–20 (9th Cir. 1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989). *A fortiori*, Security Pacific is not liable for Investia's issuance of the Reserve Certificate. The Certificate was not a security, and Security Pacific did not issue it.

A second theory on which Levine's complaint predicated the duty of Wilmington was that it had a "fiduciary duty" to the investors, and that failure to disclose all "relevant facts" was a breach of the duty. Complaint ¶ 46. Similarly Levine implied that Security Pacific had a trustee's duty

of disclosure to the investors. Complaint ¶ 57. This theory suffers from a grave, indeed fatal flaw. What is actionable under Rule 10–b–5 must, as the majority acknowledge, occur before the investors purchase the securities. *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 651 (9th Cir.1988). Even if Wilmington and Security Pacific had been trustees for the investors, they would not have been trustees for the only class that could maintain a Rule 10–b–5 action, the vast unknown anonymous set of potential investors. There is no trust relation with unidentified beneficiaries. *Scott on Trusts* §§ 112 and 122 (4th ed. 1987).

The same conclusion must be reached if we apply the test set out in *White v. Abrams*, 495 F.2d 724 (9th Cir.1974) to determine whether a duty to disclose has been pleaded. Levine alleges that the acknowledgments put out by Wilmington were false and that the investors who received them, unaware of their falsity, "would confirm to potential investors" the representations of the trust company and that "through this device Investia used the acknowledgments" as a contrivance to deceive potential investors into believing that the trust company certified the value of the diamonds. There is no allegation that Wilmington was aware that current investors would have the role of shills, bringing in potential investors. There is no allegation that the trust company had any idea of who the potential investors were or that it knew its acknowledgments to existing investors were being used to decoy potential investors. Absent any allegation of any relationship whatsoever between the trust company and the potential investors there is no allegation of a duty on the part of the trust company to disclose. An element necessary to sustain an action under Rule 10–b–5 is missing. *Chiarella v. United States*, 445 U.S. 222, 232, 100 S.Ct. 1108, 1116, 63 L.Ed.2d 348 (1980).

The case alleged against Security Pacific is, if anything, even less actionable. Investia's promotional literature, according to the complaint, informed potential investors that the Reverse Account was a "trust

fund" for the benefit of all its customers. The literature, however, did not state that Security Pacific was the trustee. Anyone reading Investia's literature would infer that Investia was establishing a trust, of which Investia was the trustee for the benefit of its clients. Neither in fact or in appearance was Security Pacific made out to be the trustee.

Qualifying and controlling Levine's allegations as to what Security Pacific permitted, the Reserve Certificate issued by Investia clearly conveyed the fact that Security Pacific was not the trustee of the fund created by Investia. The certificate read:

### CLIENT RESERVE CERTIFICATE

This certifies that American Investia, Inc. will forthwith place in account # 02–7–02401–0 at the Beverly Hills District Trust Office of Security Pacific Bank the sum of $___ in behalf of ___ ("Client"). This account is denominated "American Investia Client Reserve."

The funds in this account exclusive of interest and appreciation, if any, which shall remain the property of American Investia, are to be disbursed to Client on the occurrence of any of the following:

- American Investia's insolvency as that term is commonly defined;
- The filing by American Investia of a petition in bankruptcy under any chapter of the federal bankruptcy laws;
- The commencement by any creditor of American Investia of involuntary bankruptcy proceedings;
- Direction in writing, by an officer of American Investia, authorized by corporate resolution, directing disbursement in which event Security Pacific National Bank shall disburse to such Client or Client's beneficiaries only that portion of the principal which is attributable to him (them).

The funds in this account are to be disbursed to *American Investia* on the occurrence of any of the following:

- Presentation by American Investia to Security Pacific National Bank of requests for disbursement accompanied by resale invoices and liquidation requests from Client. In this event, only such funds are attributable to the Client named in the subject resale invoices are to be disbursed.

Signed AMERICAN INVESTIA, INC. by

___
9300 Wilshire Blvd. 2nd Floor
Beverly Hills, CA 90212

By this document Investia declared that money in its account would be held payable, in the event of certain contingencies, to its customers. Whether or not this declaration was sufficient to establish a trust and protect the money in the account from the claims of other creditors of Investia is arguable. But not a word in the certificate casts Security Pacific in the role of a trustee. The plaintiffs say that Security Pacific knew from its own contract with Investia that Investia was not a trustee. But nothing prevents a depositor in a bank from turning his deposit into a trust by contract with a third party, even though as far as the bank is concerned he is merely a depositor. When Investia told its investors that it was their trustee, nothing Security Pacific knew undermined the truth of Investia's declaration.

Where, then, does the complaint allege a legal duty on the part of Security Pacific to prospective investors in Investia? Security Pacific had no duty to advise potential purchasers that the trust account set up by Investia was open to legal attack. Security Pacific had no duty to advise such purchasers of its own role, for it had no role except that of a bank maintaining a customer's account. Security Pacific had no duty to say it was not a trustee when nothing put out by it or by Investia said or implied that Security Pacific was a trustee. Of course the standard by which fraud is measured is that of a reasonable person. *Gilbert v. Nixon*, 429 F.2d 348, 355–357 (10th Cir. 1970). Loss, *Fundamentals of Securities Regulation* (2d ed. 1988) p. 890. The public is not to be assumed to be children or devoid of common sense and innocent of

American life; they can be presumed "to have a general understanding of the business world." A. Jacobs, *Litigation and Practice Under Rule 10–b–5* (1990) § 61.-01(b) at 3–20.

The other allegations as to Security Pacific do not help the plaintiffs. Officers of Security Pacific are alleged to have said to prospective investors that they knew no reason not to invest in Investia; the officers are not alleged to have possessed any information that would have made such statements false and, moreover, there was no reason for prospective investors to rely on Security Pacific for investment advice. An officer of the bank is said to have attended one Investia sales meeting; he is not alleged to have recommended its diamonds. Security Pacific is said to have received "minutes of meetings" of Investia's board; no information showing fraud is said to have been revealed by these minutes. Security Pacific is said to have provided trade financing, international banking services, and corporate banking advice. These are routine banking services not sufficient to make Security Pacific a participant in securities fraud. *See In re Financial Corp. of America Shareholder Litigation*, 796 F.2d 1126, 1130 (9th Cir. 1986) (provision of routine accounting services does not make accounting firm responsible for fraud).

*Aiding and Abetting.* To state a claim of aiding and abetting securities fraud, one must charge the abettor with "actual knowledge" both of the fraud and of the abettor's role in furthering it. *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646 at 652. Here, all that the complaint charges is that *the fraud* must have been "readily apparent" to Wilmington, not that Wilmington's *role in the fraud* was "readily apparent" to it. The *Roberts* standard was not met.

Moreover, the ambiguous allegation appears to charge only notice of the fraud, not actual knowledge. Plaintiff's brief clarifies the ambiguity by speaking only of notice. The allegation is, therefore, legally insufficient; it does not charge Wilmington with actual knowledge of Wilmington's own role in the fraud. *Id.* at 652. Finally, as the earlier discussion of the trust company's relation to potential investors showed, there was no allegation that the trust company knew that it was furthering the fraud on prospective purchasers and therefore there was no duty to disclose. *Id.* at 653.

The allegations as to Security Pacific are these: that "with knowledge such representations were false," Security Pacific "permitted" Investia to issue a prospective "in the form of the Investia promotional materials and/or the Client Reserve Certificate," which were materially misleading "under circumstances designed to lead the investor to believe that Security Pacific was acting as a trustee for the investor's benefit."

The difficulty with these allegations is that they are undermined by the attached documents. Neither the promotional literature nor the Reserve Certificate say that Security Pacific is acting as a trustee for the client's benefit. The pleading attempts to bridge this gap by the ambiguous phrase "under circumstances designed to lead." But no circumstances are alleged that amplify the limited and specific language of the certificate itself. The pleading fails to state that Security Pacific did anything except perform routine banking services and not object to Investia issuing the certificates; and the certificates on their face do not assign Security Pacific the role the plaintiffs claim it had.

The claims that Wilmington and Security Pacific were principals fall even flatter than the aiding and abetting claim. These defendants issued no security and no prospectus. Wilmington is not alleged to have made representations to potential investors. Wilmington's only alleged representations were in a notice of receipt given actual investors. Security Pacific's only alleged representations were that it knew of no reason not to invest in Investia. So far as Levine's allegations go, these representations were true. As has already been demonstrated, the Reserve Certificates were an agreement between Investia and its investors; the certificates were not inconsistent with the bank's position as the

**1492**

depository of Investia's account. No reasonable person could have believed that Security Pacific was acting as the trustee of Investia's customers.

It is unlikely that Levine's case will survive summary judgment. It should have ended with the inspection of its allegations and the accompanying documents.