ARC ECOLOGY, et al., Plaintiffs,

v.

**U.S. DEPT. OF THE AIR FORCE, et al., Defendants.**

No. C02–05651JW.

United States District Court, N.D. California.

Dec. 3, 2003.

Scott J. Allen, Cox & Moyer, San Francisco, CA, for Plaintiffs.

Martin F. McDermott, Norman L. Rave, Jr., U.S. Department of Justice, Washington, DC, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

WARE, District Judge.

## I. INTRODUCTION

This action requires the Court to decide if Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, applies to claims brought by citizens of a foreign country against the United States to assess the alleged pollution on former U.S. military bases located in a foreign country. Pursuant to CERCLA, Plaintiffs request an order compelling the Defendants to (1) conduct preliminary assessments of the properties of two former United States military bases in the Philippines, Clark Air Force Base ("Property Formerly Clark A.F. Base") and the Subic Bay Naval Base ("Property Formerly Subic Naval Base") and (2) seek an order declaring that the provisions of CERCLA apply to those two former United States military bases. The Court finds that CERCLA does not apply to foreign countries and orders the case dismissed.

## II. BACKGROUND

The Plaintiffs in this case are Filipino citizens who live or travel around property in the Philippines which were former United States military bases.[1] The individual

---

1. The Individual Plaintiffs are Norma Duero, Noel Duero, Maritess D. Balintag, Elsa E. Gonzaga, Melody O'Brien, Connie R. Domdom, Rosalina Geronimo, Alma G. Balawin, Rosalinda I. Peraan, Zenaida A. Riley, Marissa C. Navidad, Doleres C. Mose, Adriano B. Lazarte, Lolita Sayat, Francisca Smith, Edya P. Warner, Jennifer G. Lansangan, Angelica Warner, Crispin Diala, Christina Munoz, Fernando Ferrer, Hilaria Ferrer, Emilio Ferrer, Ria Richelle Limid, Gilbert Pineda, Felipe Espinosa, Jr., Ramil Espinosa, Mario Manialung, Betty B. Valencia, Angelina M. Liwanag, Mary Ann V. Diego, Ernesto S. Borja, Ofelia M. Dizon, and Nerminda B. Sagum (collectively, "Individual Plaintiffs").

Plaintiffs are joined by two organizations, Arc Ecology and the Filipino–American Coalition for Environmental Solutions. According to the Complaint, Arc Ecology and Filipino–American Coalition for Environmental Solutions, are non-profit organizations formed for the purpose of, among other things, forming coalitions with and supporting individuals and community groups in obtaining assessment and cleanup of environmental pollution on former United States military bases in the Philippines. Plaintiffs contend that the individually named Plaintiffs are members of at least one if not both of these organizations.

The Defendants are the United States Department of the Air Force, the United States Department of the Navy, the United States Department of Defense, and Donald Rumsfeld, in his official capacity as United States Secretary of Defense (collectively, the "Defendants").

In addition to their claims under CERCLA, Plaintiffs seek an order stating that Section 300.420(b)(5) of the National Contingency Plan applies to the former military bases in the Philippines. Plaintiffs bring the same claims pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., seeking an order declaring that the Defendants' failure and refusal to conduct preliminary assessments at the Property Formerly Clark A.F. Base and the Property Formerly Subic Naval Base constitutes: (a) agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1), and, or in the alternative (b) agency actions, findings, and conclusions that are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with 5 U.S.C. § 706(2).

Defendants move the Court to dismiss the Complaint on the grounds that the Plaintiffs lack standing, Plaintiffs' failure to state a claim on which relief can be granted, and that venue is not proper in this district. The Defendants contend that CERCLA does not apply extraterritorially.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of claims asserted in a complaint. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). Dismissal under Rule 12(b)(6) is appropriate where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. DISCUSSION

### A. Standing

■ The liberal reading accorded complaints on 12(b)(6) motions is subject to the requirement that the facts demonstrating standing must be clearly alleged in the Complaint. *See Jenkins v. McKeithen,* 395 U.S. 411, 422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The Supreme Court has three constitutional standing requirements. *See* Edwin Chemerinsky, *Federal Jurisdiction Third Edition* (1999) p. 59 (citing *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) and *Northeastern Florida Contractors v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)). First, the Plaintiffs must allege that he or she has suffered or imminently will suffer an injury. *Id.* Second, the Plaintiffs must allege that the injury is fairly traceable to the Defendants' conduct. *Id.* Third, the Plaintiffs must allege that a favorable federal court decision is likely to redress the injury. *Id.*

Defendants contend that the Plaintiffs lack standing due to the vagueness of the alleged injuries suffered by the Plaintiffs. Plaintiffs contends CERCLA § 105(d) authorizes any person who is, or may be, affected by a release or threatened release of a hazardous substance to petition to

have a preliminary assessment addressing the release. Plaintiffs assert that their Amended Complaint is not vague because it alleges that numerous hazardous substances, pollutants and contaminants, including toxic solvents and other organic pollutants, have been discharged at the Clark and Subic properties as a result of the Defendants' actions.

The Defendants cite to *US. v. AVX Corp.*, 962 F.2d 108 (1st Cir.1992) as instructive on the type of injury that must be alleged in a CERCLA case. In *AVX*, an environmental organization intervened in a pollution cleanup action brought on behalf of the EPA under CERCLA. The court explained that because the constitutional doctrine of standing "seeks to ensure the existence of a case or controversy by focusing on the harm to the complainant, it is unsurprising that the 'personal injury' prong of the standing inquiry has received the bulk of the [Supreme] Court's attention." *AVX Corp.*, 962 F.2d at 113. Then, the court stated that, to survive a motion challenging a party's standing, the alleged injury must be real, and "mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury." *Id.* at 114.

The *AVX* court went on to rule that the complainant had failed to set forth "reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." *AVX Corp.*, 962 F.2d at 115. Aside from the general averment of injury to the organization's members, the court found that no specific allegations were made that members lived near the affected area and no allegations were made as to the extent and frequency of members' use of that area. *Id.* at 117. The court ruled that the claimed injury was not "anchored in any relevant particulars" and that a "bare-

bones allegation, bereft of any vestige of a factual fleshing-out, is precisely the sort of speculative argumentation that cannot pass muster where standing is contested." *Id.* at 117.

Here, Plaintiffs' Amended Complaint does name individual Plaintiffs. Plaintiffs assert that Individual Plaintiffs live or travel on the former Clark and Subic base properties, and that they have been or may be exposed to the hazardous substances, pollutants or contaminants that were released on those properties. *See* Plaintiffs' Opposition, p 4.

■ Whether Individually Named Plaintiffs have standing in this case is a close call. Plaintiffs are seeking an order compelling Defendants to conduct "preliminary assessments" of alleged environmental contamination under CERCLA and are not asserting any tort based causes of action. The Court finds that alleged injury (exposure to contaminants and denial of preliminary assessments) is traceable to the defendants' alleged conduct (Defendants' denied Plaintiffs' request to issue preliminary assessments). Also, the Court finds that a favorable federal court decision would likely redress the alleged injury.

The finding of standing for the Individual Plaintiffs permits the Court to reach the question of whether the allegations are otherwise sufficient to state a claim on which relief can be granted under Rule 12(b)(6). Because later in this Order the Court finds that the allegations are not sufficient, the Court need not reach the question of whether Plaintiffs Arc Ecology and the Filipino–American Coalition for Environmental Solutions also have standing to assert the same claims on behalf of their members. *See Western Min. Council v. Watt*, 643 F.2d 618, 628 n. 16 (9th Cir.1981).

## B. Subject Matter Jurisdiction

 A claim that a right exists under federal law is enough for jurisdiction unless the claim is insubstantial or frivolous. *See* Wright, Miller & Copper, Federal Practice and Procedure: Jurisdiction 2d § 3562 at 40–41. A substantial claim that a remedy may be implied from a federal statute is enough for jurisdiction. *Id.* If it is held that federal law does not provide for the remedy, the dismissal should be on the merits rather than for want of jurisdiction. *Id.* (citing *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL–CIO–CLC*, 457 U.S. 15, 20–22, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982)).

Plaintiffs' contention that CERCLA applies extraterritorially is one of first impression. "When the plaintiff bases his cause of action upon an Act of Congress jurisdiction cannot be defeated by a plea denying the merits of his claim." *Amlon Metals, Inc. v. FMC Corp.*, 775 F.Supp. 668, 670 (S.D.N.Y.1991) (quoting *The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913)); *see also Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (holding that jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover).

 Whether the Complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact, it must be decided after and not before the court has assumed jurisdiction over the controversy. *Bell*, 327 U.S. at 682, 66 S.Ct. 773. The Court has jurisdiction for the purposes of determining if the Plaintiffs state a cause of action on which relief can be granted. *See Bell*, 327 U.S. at 682, 66 S.Ct. 773, *see also Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). Specifically, Court has subject matter jurisdiction to adjudicate the novel claim that CERCLA allegedly applies extraterritorially. *See Jackson Transit Authority*, 457 U.S. at 21 n. 6, 102 S.Ct. 2202.

## C. Motion to Dismiss CERCLA Claim

Enacted in 1980, CERCLA was designed to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767 (1980). It generally imposes liability on owners and operators of facilities throughout the nation at which hazardous substances were improperly disposed. 42 U.S.C. § 9607(a). Through creation of the "Superfund," the federal government is empowered to respond to hazardous waste disposal. *See* 42 U.S.C. §§ 9604–9605, 9611–9612.

 CERCLA's legislative history reflects a decidedly domestic focus. *See, e.g.,* H.R.Rep. No. 99–253, pt. 1, at 55, reprinted in 1986 U.S.C.C.A.N. 2835, 2837 (noting in 1985, just prior to the Act's reauthorization, that U.S. Office of Technology Assessment had estimated that while "there may be as many as 10,000 Superfund sites across the Nation," the resources allocated to the U.S. Environmental Protection Agency ("EPA") were inadequate to fulfill "promises that were made to clean up abandoned hazardous wastes in this country."). CERCLA directs EPA to base its Superfund site listing criteria on "relative risk or danger to public health or welfare or the environment" in order to set "priorities among releases or threatened releases throughout the United States" for purposes of taking cleanup actions. 42 U.S.C. § 9605(a)(8)(A). In preparing the resulting National Priorities List, EPA is to apply the criteria thus established and

then "list as part of the [National Contingency] plan national priorities among the known releases or threatened releases throughout the United States." *Id.* § 9605(a)(8)(B); *see U.S. v. Asarco Inc.,* 214 F.3d 1104, 1105–06 (9th Cir.2000) (President is "to compile a list identifying top priorities among the nation's known hazardous waste sites. Sites on this list, the National Priorities List, are considered the leading candidates for Superfund-financed cleanup") (citing 42 U.S.C. § 9605(a)(8)(B)).

The provision that addresses the primary relief sought in the Complaint— CERCLA § 105(d), 42 U.S.C. § 9605(d)— provides that, in certain circumstances, a person who is or may be affected by a release or threatened release of a hazardous substance, pollutant or contaminant may "petition" the President to conduct a preliminary assessment of any associated hazards to public health and the environment. Section 105(d) is implemented by a provision in the National Contingency Plan, 40 C.F.R. § 300.420, under which a person may petition for a preliminary assessment when the person is or may be affected by a release of a hazardous substance, pollutant, or contaminant. Petitions involving federal facilities are addressed to the head of the appropriate federal agency and describe the release and how it affects the petitioner. Petitions must contain information about activities where the release is located and explain whether "local and state authorities" have been contacted.

Section 300.420(b)(5) specifies that the lead agency shall complete a remedial or removal Preliminary assessment within one year after it receives a complete petition if an assessment has not been performed previously, unless the agency determines that a preliminary assessment is not appropriate, in which case it is to notify the petitioner and provide a reason for the determination. When determining if a preliminary assessment is appropriate, the agency considers not only whether a release has occurred but also whether the release is eligible for response under CERCLA.

Plaintiffs rely on CERCLA § 105(d) for their contention that the United States must prepare preliminary assessments on the properties where two former U.S. military bases were located at in the Philippines. Section 105(d) provides that, if a preliminary assessment indicates that a release or threatened release may pose a health or environmental threat, the President shall "evaluate" the release or threatened release "in accordance with the hazard ranking system" referred to in section 105(a)(8)(A) "to determine the national priority of such release or threatened release." 42 U.S.C. § 9605(d). The listing criteria created under section 105(a)(8)(A) are only utilized "for determining priorities among releases or threatened releases throughout the United States." 42 U.S.C. § 9605(a)(8)(A). Further, under section 105(a)(8)(B), the President, in preparing the National Priorities List, is directed only to "list as part of the plan national priorities among the known releases or threatened releases throughout the United States." Section 105(d) does not apply to foreign locations.

 The Supreme Court has explained that it is a "longstanding principle of American law" that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (quoting *Foley Bros. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)). Courts must assume that Congress legislates against the backdrop of an underlying presumption against extraterri-

toriality and therefore must presume that a statute applies only within the United States unless it contains "the affirmative intention of the Congress clearly expressed" that it applies abroad. *EEOC,* 499 U.S. at 248, 111 S.Ct. 1227 (quoting *Benz v. Compania Naviera Hidalgo, S.A.,* 353 U.S. 138, 147, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957)); *see also Sale v. Haitian Ctrs. Council, Inc.,* 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested."). Any doubts concerning the extraterritorial application of a statute must be resolved restrictively. *Smith v. United States,* 507 U.S. 197, 204, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993); *see Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1095–96 (9th Cir.1994) (stating that, as reaffirmed by Supreme Court in *Arabian American Oil,* absent contrary intent, legislation is meant to apply only within United States' territorial jurisdiction).

The Supreme Court has explained that the "presumption against extraterritoriality" serves at least two purposes. First, it "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Arabian American Oil,* 499 U.S. at 248, 111 S.Ct. 1227. Second, it reflects the notion that when Congress legislates, it "is primarily concerned with domestic conditions." *Id.* (citation omitted); *see also Smith,* 507 U.S. at 204 n. 5, 113 S.Ct. 1178 (referring to presumption against extraterritoriality as rooted in, among other things, the "commonsense notion" that Congress "generally legislates with domestic concerns in mind.").

CERCLA includes a provision—not at issue here—that, under certain narrow conditions, allows "foreign claimants" to assert claims against the Superfund. *See* 42 U.S.C. § 9611(*l*). One of those condi-

tions is that a such a claim may be asserted only if recovery is "authorized" by a "treaty or an executive agreement between the United States and foreign country, or if the Secretary of State, in consultation with the Attorney General and other appropriate officials, certifies that such country provides a comparable remedy for United States claimants." 42 U.S.C. § 9611(*l*)(4). Plaintiffs do not rely on 42 U.S.C. § 9611(*l*), nor could they. Congress carefully delimited the circumstances when foreign damages claims will lie. *See Arabian American Oil,* 499 U.S. at 258, 111 S.Ct. 1227 (citing examples where Supreme Court stated that "Congress' awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of a statute").

CERCLA § 9601(27) provides: "The terms 'United States' and 'State' include the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction." 42 U.S.C. § 9601(27). The Philippines is an independent, sovereign nation, not a "territory or possession" over which the United States has jurisdiction.

In situations where a hazardous substance, pollutant or contaminant is released or threatened to be released into the U.S. from a bordering country, such as Mexico or Canada, EPA could respond under CERCLA to such releases or threatened releases into the United States. *See* 2003 WL 68065705, National Post, November 28, 2003 (explaining how EPA applied CERCLA provisions to Canadian company polluting lake in Washington

State). However, this case presents no such trans-border release situation that would impact property in the United States.

Plaintiffs contend that 10 U.S.C. § 2701(c)(1)(B), which is part of the Defense Environmental Restoration Program statute, includes various reporting provisions (10 U.S.C. § 2706(b)(2)(F) and § 2706(b)(2)(E)(iii)) allegedly indicating that Congress intended CERCLA to apply at military facilities located outside the United States. The fact that Congress instructed the Secretary of Defense to report on funds spent on overseas environmental remediation or on fines assessed against military installations outside the United States in no way demonstrates that Congress intended CERCLA to apply to former bases located in sovereign foreign countries.

In *Amlon Metals*, the court held that the plaintiffs' action, brought under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, failed to state a claim upon which relief could be granted because RCRA "does not extend to waste located within the territory of another sovereign nation." *Amlon Metals*, 775 F.Supp. at 672. Rejecting arguments that plaintiffs had overcome the presumption that Congress legislates against the backdrop of an underlying assumption against extraterritorially, the court noted that RCRA's citizen suit provisions "reflect a domestic focus." RCRA contains nothing prescribing a venue for citizen suits concerning waste located in a foreign country. *Id.* at 675. CERCLA's citizens suit provision was modeled, in part, on RCRA's citizen suit provision. *See* S.Rep. No. 99–11, at 62 (1985), reprinted in 2 Legislative History at 654 (Comm. Print 1990). In concluding that RCRA does not apply extraterritorially, the court observed that RCRA "contains a number of provisions designed to limit the statute's encroachment on state sovereignty, but contains no parallel provisions protecting the sovereignty of other nations." *Id.* at 676. The same analysis applies here. Although CERCLA, like RCRA, contains provisions limiting the statute's encroachment on state sovereignty, CERCLA, too, contains no parallel provisions protecting the sovereignty of foreign countries.

■■■ The Court finds that plain language of CERCLA does not support applying it extraterritorially to cover properties located within another sovereign nation.

### D. Motion to Dismiss APA Claim

Plaintiffs' second cause of action added in their Amended Complaint is based on the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Plaintiffs rely on APA §§ 706(1) and (2). Under the former, the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." Under the latter, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §§ 706(1), 706(2)(A).

Under APA § 706, the Court shall "compel agency action unlawfully withheld or unreasonably delayed." Here, the Navy and Air Force have both denied Plaintiffs' CERCLA § 105(d) petitions and provided an "explanation of why the assessment is not appropriate." 42 U.S.C. § 9605(d). Under APA section 706(2), the court shall hold unlawful agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

the law." 5 U.S.C. § 706(2)(A). For the reasons stated above, the Court finds that the assessments made by both the U.S. Air Force and Navy were neither arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with the law. In fact, the Court's holding that CERCLA does not apply extraterritorially to property located within a sovereign nation is consistent with the decision made by the U.S. Air Force and Navy.

Because Plaintiffs have failed to state a claim on which relief can be granted, the Court does not reach the improper venue issue raised by the Defendants.

## IV. CONCLUSION

The Court grants Defendants' Motion to Dismiss Plaintiffs' Complaint. The Court finds that there is no set of facts which would support a claim. Accordingly, the dismissal is with prejudice. The Clerk of the Court is ordered to close the file.