990 F.2d 1256
 RICO Bus.Disp.Guide 8274
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stephen COPE; France Bolei; Paul Costa; Donald Fuller, on
behalf of themselves and the class they represent,
Plaintiffs-Appellants,
United States of America, Intervenor,
v.
PRICE WATERHOUSE; Kenneth Leventhal & Company; Stephen
Roulac, Defendants-Appellees.
 No. 92-15901.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1993.
Decided April 7, 1993.
 
 Before GOODWIN, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Brichard & Co. ("Brichard") syndicated eight public limited partnership offerings, each of which was formed to acquire and operate a large apartment complex. Upon the financial collapse of the partnerships in 1987, the limited partners brought a class action suit against Price Waterhouse, which conducted certain audits for Brichard, and Kenneth Leventhal & Co., Stephen Roulac, and Stephen Roulac & Co. (collectively "the Consultants"), which prepared written pre-offering reports on the apartment complexes.[1] They asserted statutory claims under section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), California Corporations Code § 25504.1,[2] and the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and common law claims of fraud, negligence, and negligent misrepresentation.
 
 
 3
 The district court granted summary judgment in favor of Price Waterhouse and the Consultants on all claims. We affirm.
 
 Factual Background
 
 4
 Each of the Brichard public offerings was sold through an SEC-registered prospectus which contained pro forma statements of anticipated operating income. Appellants focus on alleged misrepresentations made by Brichard in the pro forma statements and the alleged liability of Price Waterhouse and the Consultants for these misrepresentations.
 
 
 5
 Price Waterhouse audited the Statements of Revenues and Direct Operating Expenses, and its audit reports appeared in the prospectuses. The prospectuses stated that the pro forma statements were "based upon the historical Statement of Revenues and Direct Operating Expenses included elsewhere herein and upon adjustments resulting from application of the assumptions set forth in the Notes below." Pursuant to firm policy, Price Waterhouse auditors read each prospectus for the purpose of considering whether there were any material misstatements of fact or material inconsistencies between the audited financial statements and other information in the prospectuses. After the partnerships began operations, Price Waterhouse also audited their year-end financial statements.
 
 
 6
 Although several of the "wrappers" for the offering materials identified Price Waterhouse as "Partnership accountant for the Prospectus and for the important audit of historical performance," Brichard did not engage Price Waterhouse to perform analysis or issue a report on any portion of a Brichard prospectus other than the historical financial statements. In fact, the pro forma statements explicitly noted that "[t]hese statements are not covered by the report of the independent accountants" and that "[t]hese statements do not purport to forecast actual operating results for any period in the future."
 
 
 7
 The Consultants prepared written reports addressed to Brichard which consisted of an economic analysis of four of the eight properties and a due diligence opinion letter analyzing the reasonableness of certain of Brichard's assumptions concerning seven of the eight properties. Each analysis specifically noted that the terms of the Consultants' engagement "did not provide for an examination of your financial projections or for reporting on events and transactions subsequent to the date of this report." Although several of the offering wrappers identified the Consultants as responsible for "economic analysis and due diligence review," the Consultants' reports were not included in the prospectuses nor were they distributed to any investors.
 
 Secondary Liability Under Section 10(b)
 A. Price Waterhouse
 
 8
 The district court held that the statute of limitations for section 10(b) claims announced in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773 (1991), applied to appellants' action against Price Waterhouse. The court later denied appellants' motion to reinstate their Rule 10b-5 action against Price Waterhouse pursuant to section 27A of the 1934 Act.[3] It ruled that section 27A, a special provision relating to the statute of limitations on private causes of actions, was unconstitutional.
 
 
 9
 In a published opinion, we held that section 27A is constitutional. Gray v. First Winthrop Corp., No. 91-16907, slip op. (9th Cir. April 7, 1993). Price Waterhouse argues, however, that there is an alternative ground for upholding summary judgment in its favor. See In re Apple Computer Securities Litigation, 886 F.2d 1109, 1112 (9th Cir.1989), cert. denied, 496 U.S. 943 (1990) (court "may affirm on any ground supported by the record"). Price Waterhouse contends that actual knowledge of fraud is necessary to impose aiding and abetting liability under section 10(b), and that there is no genuine issue of material fact regarding its knowledge of allegedly false and misleading statements in the Brichard prospectuses.
 
 
 10
 In Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir.1990) (en banc), cert. denied, 111 S.Ct. 1621 (1991), we held that recklessness satisfies the scienter requirement for primary liability under section 10(b). Then, in Levine v. Diamanthuset, Inc., 950 F.2d 1478 (9th Cir.1991), we accepted the Hollinger standard of recklessness as applicable to a suit for secondary liability under section 10(b): "To state a claim of aiding and abetting securities fraud, one must plead (1) the existence of an independent primary wrong, (2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and of his or her role in furthering it, and (3) substantial assistance in the wrong." Id. at 1483.[4]
 
 
 11
 The Levine court carefully defined the parameters of the recklessness standard as a basis for aiding and abetting liability under section 10(b). Recklessness was a sufficient basis for liability given the facts of Levine, because the alleged aider and abettors' conduct consisted of "actual misrepresentations." 950 F.2d at 1484 nn. 4 & 6. The court found it unnecessary to discuss whether these parties had a duty to disclose any information, because their liability was "premised in part not on silence, but on actual misrepresentations." Id. In discussing the liability of Wilmington, an alleged aider and abettor, for fraud allegedly perpetrated on Levine by Investia, the court noted: "Unless Levine proves Wilmington had actual knowledge of Investia's Rule 10b-5 violations, it may be necessary to revisit the question of Wilmington's duty to disclose if aiding and abetting liability is ultimately to be premised only on the appearance of Wilmington's name in Investia's promotional materials." Id. at n. 4.
 
 
 12
 In other words, if the complaining party cannot show actual knowledge of fraud, and its claim for secondary liability under section 10(b) is based on the aiding and abetting party's silent acquiescence to the primary party's use of its name, the question of liability hinges upon whether the secondary party had an independent duty of disclosure. If so, recklessness will suffice for liability as an aider and abettor under section 10(b).
 
 
 13
 Price Waterhouse did not make any affirmative misrepresentations or omissions in its audit reports or opinion letters; its audit reports accurately conveyed the financial condition of the audited properties. Summary judgment in favor of Price Waterhouse is therefore appropriate unless appellants can point to evidence that Price Waterhouse had actual knowledge of Brichard's alleged misrepresentations and therefore a duty to disclose under Roberts, or that Price Waterhouse was reckless and also owed the investors an independent duty of disclosure.
 
 
 14
 Appellants claim that the evidence in the record raises a triable issue under an actual knowledge standard. They assert that Price Waterhouse did not limit its involvement to the audited statements. Appellants contend that Price Waterhouse reviewed the prospectuses in their entirety and was aware that the marketing of the Brichard partnerships as sound economic deals was false and misleading given historical vacancy rates and operating results, purchase prices and acquisition fees of the properties compared with their appraised values, and the impact of refurbishment on the properties.
 
 
 15
 While it is apparent that Price Waterhouse knew of the nature of these assumptions and discussed them with Brichard, there is no evidence in the record that Price Waterhouse performed any analysis of these projections. Price Waterhouse was not retained to analyze the forward-looking pro forma assumptions.
 
 
 16
 This case is distinguishable from Seaboard in which the complaining party presented facts suggesting that the accounting firm's "involvement exceeded mere audit of the financial statement and that it knew of the material misrepresentations and omissions." 677 F.2d at 1312. In contrast to Price Waterhouse, the accounting firm in Seaboard "had responsibility for preparation of all financial information to be included in the prospectus" and had chosen a prospectus cutoff date designed to portray an "unduly positive picture" of the company's financial situation. Id. at 1312-13.
 
 
 17
 Appellants also claim that Price Waterhouse became aware that the Brichard partnerships were experiencing massive negative cash flows, yet it continued to allow the inclusion of its opinion letters and audit reports in offerings that failed to mention the partnerships' poor performance. The record shows that Price Waterhouse knew that the pro formas anticipated at least breakeven cash flow and also knew, based on its year-end audits, that the actual results differed from those anticipated by the investors. However, Price Waterhouse's audit statements did not conceal this fact; rather, they acknowledged the negative cash flows under the title "Funds provided by (used in) operations."
 
 
 18
 The record therefore does not support the conclusion that Price Waterhouse knowingly aided Brichard in misrepresenting the state of its business ventures. Furthermore, the imposition of liability on the basis of recklessness presupposes that Price Waterhouse owed the investors a duty of disclosure. Appellants offer no reason for the existence of such a duty regarding any material other than the audited reports and opinion letters.
 
 
 19
 For the foregoing reasons, we affirm summary judgment on the issue of Price Waterhouse's secondary liability under section 10(b) on the alternative ground that there is no genuine issue for trial.
 
 B. The Consultants
 
 20
 The district court granted summary judgment in favor of the Consultants on the issue of secondary liability under section 10(b). The Consultants' economic analyses and due diligence reports were addressed to Brichard and were distributed by Brichard to broker-dealers for use in conducting their own due diligence examinations. It is undisputed that none of the Consultants' reports was given to an investor. Appellants' claim for secondary liability under section 10(b) rests on the Consultants' silent acquiescence to the use of their name in Brichard promotional materials.
 
 
 21
 Because the prospectuses on which the investors relied contained no affirmative misrepresentations or omissions by the Consultants, appellants must demonstrate that the Consultants had actual knowledge of Brichard's misrepresentations and therefore a duty to disclose under Roberts, or that the Consultants were reckless and also owed the investors an independent duty of disclosure. See discussion supra pp. 5-6.
 
 
 22
 The Consultants and appellants "had no prior dealings or pre-existing relationship and the circumstances of the transaction were not such as to create a relationship of trust and confidence, [therefore] the threshold requirement of a duty to disclose has not been met." Jett v. Sunderman, 840 F.2d 1487, 1493 (9th Cir.1988). As in Jett, the record reveals that the Consultants "had no communications with the investors and did not initiate the transaction or participate in it in any way that would induce the investors to rely on the [Consultants] to disclose information." Id. This case is distinguishable from S.E.C. v. Rogers, 790 F.2d 1450, 1458 (9th Cir.1986), in which an allegedly disinterested expert had made representations to others who were unaware of the expert's participation in the enterprise or his potential for gain. In the present case, there is no evidence in the record that the Consultants made any representations to appellants. Recklessness therefore forms an insufficient basis to impose secondary liability upon the Consultants under section 10(b).
 
 
 23
 Consequently, appellants had to demonstrate that the Consultants had actual knowledge of Brichard's alleged misrepresentations. Actual knowledge could be proven either by demonstrating that (1) the reports, on which the prospectuses were based, were prepared in a knowingly fraudulent manner by the Consultants, or that (2) despite the accuracy of the reports, the prospectuses contained information that was materially at odds with the reports and the Consultants were aware of this discrepancy. Appellants failed to produce evidence supporting either theory of actual knowledge.
 
 
 24
 First, the evidence does not establish knowingly fraudulent conduct by the Consultants. The reports were not blanket endorsements of Brichard's assumptions; rather, they discussed the relevant risk factors for each property, noting that some of the assumptions were unreasonable or difficult to achieve. Appellants' experts testified that the Consultants performed their responsibilities in "a limited, constrained and unsatisfactory manner" which had the result of "misrepresent[ing] the economic soundness of the Brichard offerings." Although the expert testimony supports a case of professional negligence, it does not establish the existence of any fraudulent conduct. Furthermore, appellants' claim that the Consultants had "shopped around" for inflated appraisals of the properties' value finds scant support in the record.[5]
 
 
 25
 Second, the record does not support appellants' claim that the Consultants reviewed the prospectuses in order to prepare their reports, and, despite their knowledge of substantial discrepancies between the two documents, allowed the use of their names on the offering wrappers. Although "[o]ffering memorandum and associated financial projections" are included on a checklist of documents requested by the Consultants, the Consultants' reports were delivered far in advance of the prospectus dates and contained an explicit disclaimer that there had been no examination of the Brichard financial projections. In addition, while there is evidence that the Consultants spent a good deal of time and effort critiquing the marketing and sales aspects of the Brichard program, there is no evidence that they provided any input on the financial aspects of the deal.
 
 
 26
 Based on the foregoing analysis, we affirm summary judgment in favor of the Consultants on the claim of aiding and abetting fraud in violation section 10(b).
 
 Primary Liability under Section 10(b)
 
 27
 The district court dismissed without leave to amend appellants' primary liability claim under section 10(b) and denied appellants' motion to amend their complaint to replead this claim. The court reasoned that Price Waterhouse was not "responsible for making any outright representation."
 
 
 28
 An accountant can be primarily liable not merely for an "outright misrepresentation" but also for a materially misleading omission. However, appellants failed to allege any material omission by Price Waterhouse in the audit reports or the year-end financial statements. Rather, they alleged that Price Waterhouse's audit reports had been incorporated into false and misleading 10-Q and 10-K reports distributed to investors and the SEC. Appellants also claimed that Price Waterhouse allowed its name to be displayed in offering materials, registration documents, and reporting documents, despite its knowing or having reason to know that these documents were false and misleading. These allegations focused on Price Waterhouse's knowingly or recklessly aiding and abetting fraud. We therefore affirm the dismissal of appellants' claims for primary liability.
 
 Common Law Fraud
 
 29
 The district court granted summary judgment in favor of Price Waterhouse and the Consultants on the pendent claim of common law fraud.
 
 
 30
 In a case of secondary liability for common law fraud, the California Supreme Court held that "[t]he words 'aid and abet' ... have a well understood meaning, and may fairly be construed to imply an intentional participation with knowledge of the object to be attained." Lomita Land & Water Co. v. Robinson, 154 Cal. 36, 47 (1908).
 
 
 31
 The Second Restatement of Torts also supports a finding that actual knowledge is the proper standard for a claim of aiding and abetting fraud. Section 876(b) provides for secondary liability for tortious conduct if a party "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b). Other subsections indicate that the term "knows" does not include both actual knowledge and recklessness. When the drafters of the Restatement meant to include recklessness as an element of liability, they did so explicitly. See, e.g., Restatement (Second) of Torts § 877(c) (liability if one party "permits the other to act upon his premises or with his instrumentalities, knowing or having reason to know that the other is acting or will act tortiously").
 
 
 32
 Appellants' reliance upon Bily v. Arthur Young, 3 Cal. 4th 470 (1992), is misplaced. In Bily, the auditors allegedly made misrepresentations in their audit reports. Id. at 378-79. The court concluded that "[b]y joining with its client in an intentional deceit, the auditor thrusts itself into a primary and nefarious role in the transaction." Id. at 415 (emphasis added). In essence, the court held that primary party liability provides the appropriate framework for analyzing the conduct of a party who makes actual misrepresentations.
 
 
 33
 This is consistent with the foregoing analysis of secondary liability under section 10(b); under both federal law and state common law, recklessness will suffice for liability if actual misrepresentations are made. However, there is no California, or federal, authority for the proposition that Price Waterhouse may be held liable as an aider and abettor for Brichard's alleged misrepresentations in the unaudited portions of the prospectuses unless appellants can demonstrate actual knowledge of fraud or the existence of an independent duty of disclosure. Similarly, there is no reason to hold the Consultants liable for Brichard's alleged misrepresentations absent such a showing.
 
 
 34
 Appellants failed to produce evidence that meets this standard, see discussion supra pp. 4-11, and the district court correctly granted summary judgment on the common law claim of fraud.
 
 Negligence and Negligent Misrepresentation
 
 35
 The district court granted summary judgment in favor of Price Waterhouse and the Consultants on the pendent state claims of negligence and negligent misrepresentation.
 
 A. Price Waterhouse
 
 36
 Bily carefully discusses the scope of auditor liability under the theories of negligence and negligent misrepresentation.
 
 
 37
 With regard to the appellants' negligence theory, the California Supreme Court held that "an auditor's liability for general negligence in the conduct of an audit of its client financial statements is confined to the client i.e., the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory." Bily, 3 Cal. 4th at 406 (footnote omitted).
 
 
 38
 The court noted that "there is an additional class of persons who may be the practical and legal equivalent of 'clients.' " Id. at 406 n. 16. An "audit engagement contract might expressly identify a particular third party or parties to make them express third party beneficiaries of the contract." Id. Although the limited partners were not named beneficiaries of the audit engagement contract between Price Waterhouse and Brichard, Price Waterhouse was aware that the audits were prepared for inclusion in the offering prospectuses. In fact, Price Waterhouse addressed its opinion letters to the "partners" in seven of the eight offerings.
 
 
 39
 Assuming arguendo that the limited partners were the "practical and legal equivalent" of Price Waterhouse clients with regard to its audit reports, summary judgment was still appropriate on appellants' claim of negligence. Each of the opinion letters addressed to the "partners" explained that Price Waterhouse had prepared a report which "presents fairly the financial position of [the limited partnership]." Appellants are unable to point to any misstatements or omissions in the audited reports prepared by Price Waterhouse.[6] The accounting firm's duty of care does not extend to the pro formas, all of which were marked "unaudited" and all but one of which explicitly noted: "These statements are not covered by the report of independent accountants." There is no basis to hold Price Waterhouse liable for the conduct of Brichard under a negligence theory.
 
 
 40
 With regard to appellants' claim of negligent misrepresentation, we recognize that, under California law, "the gravamen of the cause of action for negligent misrepresentation is actual, justifiable reliance on the representations in [a] report." Bily, 3 Cal. 4th at 413. In Bily, for example, an accounting firm faced liability for negligent misrepresentations in its audits. The California Supreme Court emphasized that "an instruction based on negligent misrepresentation necessarily and properly focuses the jury's attention on the truth or falsity of the audit report's representations and plaintiff's actual and justifiable reliance on them." Id.
 
 
 41
 Price Waterhouse made no representations regarding the reasonableness of the pro forma assumptions or the accuracy of the textual information in the prospectuses. The pro forma statements specifically stated that they were not covered by the Price Waterhouse audit. Consequently, appellants' alleged reliance on the pro forma statements cannot be attributed to Price Waterhouse's conduct.
 
 B. The Consultants
 
 42
 Although Bily dealt with the liability of accountants, its legal rationale is equally applicable to the issue of the Consultants' liability. The Consultants were retained by Brichard. They owed Brichard a duty of care. Appellants were not identified as third party beneficiaries of the contract between Brichard and the Consultants and cannot subject the Consultants to liability for negligence.
 
 
 43
 Moreover, there is no basis to hold the Consultants liable for negligent misrepresentation. Such a claim requires "actual, justifiable reliance" on a party's representations. Id. There is no evidence that the Consultants made any representations to appellants or that appellants ever saw the Consultants' reports.
 
 RICO
 
 44
 The district court dismissed, pursuant to Rule 12(b)(6), appellants' RICO claims against Price Waterhouse and Leventhal and Roulac.
 
 
 45
 We reject, as a preliminary matter, Price Waterhouse's argument that appellants waived their RICO claims by failing to allege them in their operative complaints. Price Waterhouse cites authority to the effect that "[b]y filing an amended complaint, plaintiff waives any error in the ruling to the original complaint." Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Etc. Local 150, 440 F.2d 1096, 1098 (9th Cir.1971). In Sacramento Coca-Cola, however, the court had granted leave to amend. In the present case, by contrast, the court dismissed the claim with prejudice, and the waiver rule enunciated in Sacramento Coca-Cola is inapposite.
 
 
 46
 We find, nevertheless, that appellants failed to state a claim against Price Waterhouse or the Consultants for liability under RICO. In Reves v. Ernst & Young, No. 91-886, --- U.S. ----, 93 Daily Journal D.A.R. 2750 (1993), the accounting firm of Arthur Young prepared financial statements that overvalued the central asset of a farmers' co-operative. Holders of the co-op's notes, which became worthless, sued Arthur Young for securities fraud and violation of RICO. The Supreme Court held that "it is clear that Congress did not intend to extend RICO liability ... beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." Id. at 2754. Although the Court rejected the D.C. Circuit's "significant control" test, it held that "some part in directing the enterprise's affairs is required." Id. at 2753 & n. 4 (emphasis in original); cf. Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 659, 913 F.2d 948, 954 (1990) (significant control required for liability under RICO).
 
 
 47
 Appellants failed to allege that Price Waterhouse or Leventhal and Roulac operated or managed the Brichard enterprise, and the record does not support such a finding. The district court's dismissal of appellants' claim was proper.
 
 Conclusion
 
 48
 The district court's grant of summary judgment in favor of Price Waterhouse on the section 10(b) claims is AFFIRMED on other grounds. The district court's grant of summary judgment in favor of Price Waterhouse on all other claims is AFFIRMED, and its grant of summary judgment in favor of the Consultants on all claims is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Stephen Roulac was affiliated with Leventhal only during the time of the second through the fifth offerings; the claims against Leventhal relate to these offerings alone. Although Roulac did not prepare a due diligence opinion for the first offering, he was hired by a broker-dealer, Sutro & Co., to do an independent due diligence evaluation
 
 
 [2]
 Appellants conceded in their reply brief that their claims under § 25504.1 are barred by the applicable statute of limitations. See Cal.Corp.Code § 25506
 
 
 [3]
 A motion to reinstate under 15 U.S.C. 78aa-1(b) was technically unnecessary in this case. The district court noted that it had previously "invited the submission of orders applying Lampf to these cases, but the submitted orders have not as yet been signed." Nevertheless, the court evaluated the motion to reinstate as if it had formally dismissed appellants' claims
 
 
 [4]
 Notwithstanding Levine, Price Waterhouse argues that under Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 652 (9th Cir.1988) (per curiam), cert. denied, 493 U.S. 1002 (1989), actual knowledge is necessary for liability to attach when an alleged aider and abettor's conduct amounted to no more than silence. In Roberts, the court held that allegations that an accounting firm had actual knowledge of a section 10(b) violation yet allowed the use of its name in offering memoranda "may be sufficient to create a duty to disclose." Id. at 653. Under Roberts, a party has a duty to disclose a section 10(b) violation if it has actual knowledge of it. However, this does not lead to the conclusion that actual knowledge is a prerequisite for liability under section 10(b). Furthermore, in two other cases, we noted that recklessness was an appropriate level of scienter to impose secondary liability under federal law. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 188-89 (9th Cir.1987); SEC v. Seaboard Corp., 677 F.2d 1301, 1312 (9th Cir.1982)
 
 
 [5]
 The record does not support appellants' claim that the Consultants fired Don Blackstone for refusing to inflate his appraisals. Blackstone testified that he began to "realize that [the Consultants] may have a habit of trying to manipulate appraisers," yet conceded that the Consultants gave no written or verbal indication that they desired false appraisals. The Consultants' most grievous overstepping of the bounds of propriety occurred when they "mentioned [to Blackstone] what kind of value [the property] ... was worth." Appellants also imply that Carl Votolato was terminated by the Consultants for failing to inflate his appraisals; however, there is no evidence at all to this effect
 
 
 [6]
 Appellants claim that Price Waterhouse's conduct was in violation of independence, client retention, and going concern standards, yet they do not allege that these violations affected the accuracy of the reports. Even assuming that Price Waterhouse failed to meet these professional standards, appellants have failed to demonstrate a "legal causal connection between the negligent conduct and the resulting injury." Bily, 3 Cal. 4 th at 413 n. 20
 Other evidence noted by appellants to demonstrate that their claim does, in fact, relate to the financial statements is wholly irrelevant. For example, they note that their complaints contained allegations that the audited financial statements were misleading. However, to survive summary judgment, appellants must demonstrate some substance behind the bare allegations.