BEA, Circuit Judge,
concurring:
I generally concur in the panel’s analysis and disposition. I write separately only to clarify the intended scope of the new legal rules we announce today.
A. Rule 13a-14
I turn first to our holding that Rule 13a-14, a regulation promulgated pursuant to the Exchange Act of 1934 (“Exchange Act”), permits a cause of action against a Chief Executive Officer (“CEO”) or Chief Financial Officer (“CFO”) for “false” certification of a financial report.[1] Maj. Op. at 1104, 1112-13. I agree that the district court erred to the extent it recognized a cause of action under Rule 13a-14 only for the failure to file any certification at all, and granted summary judgment to Defendants Peter Jensen (“Jensen”) and Thomas Tekulve (“Te-kulve”) (collectively, “Defendants”) on that basis. I therefore concur in the panel’s reversal of the district court’s grant of summary judgment to Defendants on this claim. Maj. Op. at 1113.
Nevertheless, I would emphasize that not every inaccurate certification is “false” within the meaning of the rule we announce. Maj. Op. at 1104, 1112-13. Rather, the concept of falsity embodies a mental element. Merriam-Webster defines “false,” as “intentionally untrue” (e.g., “false testimony”), and as “intended or tending to mislead” (e.g., “a false promise”). False, Merriam-Webster (last visited Aug. 9, 2016). Thus, to prevail on a cause of action for false certification in violation of Rule *1118 13a-14, the SEC must show that the CEO or CFO who certified as true a financial statement which contained materially false or misleading information acted with some mental culpability.
Specifically, I would hold that liability for false certification under Rule 13a-14 may lie only where a CEO or CFO acts with knowledge or at least recklessness as to the falsity of a certification. I find support for this rule in the plain meaning of the word “false.” But should some imaginative person claim “false” is somehow an ambiguous term, I also find support in the SEC’s official release in connection with the final version of Rule 13a-14. See Certification of Disclosure in Companies’ Quarterly and Annual Reports, Release No. 8124, 78 S.E.C. Docket 875, 2002 WL 31720215, at *9 (Aug. 28, 2002) [“Release No. 8124”].[2] As an agency’s interpretation of its own regulation, Release No. 8124 is entitled to “substantial deference.” Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); see also Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 208-09, 131 S.Ct. 871, 178 L.Ed.2d 716 (2011) (With the exception of “post hoc rationalization^]” taken by an agency “as a litigation position,” or interpretations that are “plainly erroneous or inconsistent with the regulation,” courts generally “defer to an agency’s interpretation of its own regulation.”).
SEC Release No. 8124 envisions that liability for a “false” certification will require at least recklessness on the part of the certifying officer. Under a section entitled “Liability for False Certification,” Release No. 8124 provides:
An issuer’s principal executive and financial officers already are responsible as signatories for the issuer’s disclosures under the Exchange Act liability provisions [citing Sections 13(a) and 18 of the Exchange Act] and can be liable for material misstatements or omissions under general antifraud standards [ie. under Exchange Act Section 10(b) ánd Rule 10(b)-5] and under our authority to seek redress against those who cause or aid or abet securities law violations [citing various sections of the Exchange Act which impose reporting requirements on the issuer]. An officer providing a false certification potentially could be subject to Commission action for violating Section 13(a) or 15(d) of the Exchange Act and to both Commission and private actions for violating Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.
Release No. 8124, at *9. I address each of the provisions listed in Release No. 8124 as a basis for liability for false certification in turn.
Section 13(a) of the Exchange Act, codified at 15 U.S.C. § 78m, requires “ ‘every issuer having securities registered’ with the SEC to file annual [and quarterly] reports including certain financial information.” Ponce v. S.E.C., 345 F.3d 722, 734 (9th Cir. 2003). Because the text of Section 13(a) focuses on the issuer’s conduct, an aiding and abetting theory is necessary to hold the CEO or CFO liable for a Section 13(a) violation. In the securities context, aiding and abetting liability requires the SEC to establish “(1) the existence of an independent primary wrong [by the issuer], (2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and of his or her role in furthering it, and (3) substantial assistance in the *1119 wrong.” Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1483 (9th Cir. 1991) (emphasis added) (setting forth the elements of a prima facie cause of action for aiding and abetting securities fraud); see also Ponce, 345 F.3d at 734 (SEC must prove the same elements in order to prevail on a claim that the defendant aided and abetted an issuer’s violation of Section 13(a) by causing the issuer to file false annual and quarterly reports). In sum, at least recklessness as to the falsity of a certification is required to hold an officer liable for aiding and abetting an issuer’s issuance of a false or misleading financial statement in violation of Section 13(a) by falsely certifying the statement as true.[3]
Section 15(d) of the Exchange Act imposes an analogous reporting requirement on the issuer. See 15 U.S.C. § 78o(d) (“Each issuer [of registered securities] ... shall file with the Commission, in accordance with such rules and regulations as the Commission may prescribe ... such supplementary and periodic information, documents, and reports as may be required pursuant to section 78m of this title *1120 [ie., Section 13(a) ] in respect of a security-registered [with the SEC].”). In S.E.C. v. Fehn, 97 F.3d 1276 (9th Cir. 1996), this Circuit recognized that a cause of action may lie against an executive for an issuer’s violation of Section 15(d) — again under an aiding and abetting theory. Id. at 1288. We concluded that the elements were similar to those required for aiding and abetting under Section 10(b) (securities fraud): “(1) the existence of an independent primary violation; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) ‘substantial assistance’ in the commission of the primary violation.” Id. Thus, under our precedent, the SEC must establish knowledge to hold a CEO or CFO liable under Section 15(d) for falsely certifying a financial report as true.
A CEO or CFO could also be held liable, either directly or through an aiding and abetting theory, under the Exchange Act’s anti-fraud provisions. Liability for securities fraud under Exchange Act Section 10(b) and its implementing regulation, Rule 10b-5 (which collectively prohibit fraud in the purchase or sale of securities),[4] requires a showing of “scienter.” Id. at 1289 (“To prove a primary violation of Section 10(b) of the Securities Exchange Act, the SEC was required to ‘show that there has been a misstatement or omission of material fact, made with scienter.’ ” (citation omitted)). We. have held that “[knowledge or recklessness [as to whether statements made in connection with the sale of securities are false or misleading] is required for a finding of scienter under § 10(b).” Howard v. Everex Sys., Inc., 228 F.3d 1057, 1063 (9th Cir. 2000). Sitting en banc, we have previously defined “recklessness” for purposes of Section 10(b) violations as “a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.” Id. (quoting Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc)). In other words, direct liability under Section 10(b) and Rule 10b-5 would also require the SEC to establish that the CEO or CFO acted either knowingly or with “inexcusable negligence” in certifying a financial report as true when the report in fact contained false or misleading statements. Alternatively, aiding and abetting liability for the issuer’s commission of securities fraud would require a showing that the CEO or CFO knowingly or reek- *1121 lessly aided the issuer’s commission of securities fraud by falsely certifying as true a financial report that in fact contained false or misleading statements. See Levine, 950 F.2d at 1483.
Finally, SEC Release No. 8124 cites Section 18 of the Exchange Act as a basis for imposing liability on a CEO or CFO who falsely certifies a financial statement as true. Section 18 imposes direct liability on “[a]ny person who ... make[s] or cause[s] to be made any statement in any application, report, or document ... which ... at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact.” 15 U.S.C. § 78r(a). Plainly, a false certification is a “statement” which is “false or misleading with respect to any material fact” — namely, that the certified financial statement is accurate. Though mental culpability is not an element of a prima facie Section 18 violation, that section contains a “defense of good faith”: A person who makes a false or misleading statement is not liable under Section 18 if that person can “prove that he acted in good faith and had no knowledge that such statement was false or misleading.” Id. (emphasis added). Though the burden rests on the defendant under Section 18 rather than on the SEC as it does under related securities laws, Section 18 — like the other provisions discussed above — ultimately requires the fact-finder to conclude that the CEO or CFO had knowledge of the falsity of a certification in order for the SEC to prevail on a claim for false certification.
From consideration of the sources cited, I conclude that — simultaneously with its issuance of Rule 13a-14 — the SEC explicitly considered and listed various mechanisms through which an officer may be held liable for a false certification. Each of the enforcement mechanisms listed requires the executive to have acted with knowledge or recklessness as to the falsity of a certification in order to be held liable for it. We may therefore reasonably infer that the SEC, in promulgating Rule 13a-14, intended any cause of action brought thereunder to require a showing of recklessness or knowledge. The SEC’s official position on this issue is entitled to deference, Thomas Jefferson Univ., 512 U.S. at 512, 114 S.Ct. 2381, particularly given that it is consistent with the plain meaning of the word, “false,” as explained above.
B. SOX 304
I also concur in today’s holding that Section 304 of the Sarbanes-Oxley Act (“SOX 304”) permits the SEC to seek disgorgement of executive compensation whenever an issuer is required to restate a financial report because of the issuer’s misconduct — personal misconduct on the part of the CEO or CFO is not required. Maj. Op. at 1115.[5]1 therefore concur in the panel’s reversal of the district court’s interpretation of SOX 304 as requiring the SEC to establish personal “misconduct” on the part of the CEO and CFO. Maj. Op. at *1122 1117. However, the panel’s rule fails to provide sufficient instruction to the district court judge on remand, who will be required to determine whether the jury’s findings with respect to the SEC’s Claims One through Six, coupled with other relevant record evidence, establish that Basin Water, Inc. committed “misconduct.”[6] Neither we, nor the SEC, have previously explained what qualifies as “misconduct” as necessary to trigger disgorgement under SOX 304, and thus further clarification regarding the meaning of “misconduct” is warranted here.
I would adopt a plain language understanding of the word, which Merriam-Webster defines as “1. mismanagement” or “2. intentional wrongdoing; specifically: deliberate violation of a law or stan-dard_” Misconduct, Merriam-Webster (last visited Aug. 10, 2016). In my view, “misconduct” requires an intentional violation of a law or standard (such as GAAP) on the part of the issuer, which can be shown by evidence that any employee of the issuer (not only the CEO or CFO), acting within the course and scope of that employee’s agency, intentionally violated a law or corporate standard.
Such an understanding is consistent with the statutory scheme of which SOX 304 is a part, as well as the case law to date. SOX 302, entitled “Corporate responsibility for financial reports,” requires CEOs and CFOs to “certify in each annual or quarterly report” that the officers have reviewed the report and, based on their knowledge, the report does not contain any false or misleading statements or omissions of material fact. 15 U.S.C. § 7241(a). More importantly, the signing officers must certify that they have “designed ... internal controls to ensure that material information relating to the issuer ... is made known to such officers by others within [the issuer], particularly during the period in which the periodic reports are being prepared,” and the officers “have evaluated the effectiveness of the issuer’s internal controls as of a date within 90 days prior to the report.” Id. (emphasis added).
In'short, SOX 302 (in conjunction with other securities rules and regulations) imposes a management obligation on CEOs and CFOs to maintain internal controls that will be effective in ensuring that other agents of the issuer are — for purposes of the present case — recording income in a manner that produces accurate and complete financial statements in accord with GAAP. See id.; see also 17 C.F.R. § 229.601(b)(31) (requiring CEOs and CFOs to certify, in accordance with Rule 13a-14, “exactly” as follows: “The registrant’s other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures ... and internal control over financial reporting ... and have ... [among other things] [d]esigned such internal control over financial reporting ... to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.... ” (emphasis added)); Maj. Op. at 1105 n.1x`.
*1123 In turn, SOX 304 encourages vigorous compliance with SOX 302 by making CEOs and CFOs subject to disgorgement if their internal controls fail to prevent (or to detect prior to the publication of a false or misleading financial report) intentional wrongdoing by any authorized agent of the issuer. When the internal controls fail to detect such wrongful behavior, a CEO or CFO (and thus, by extension, the issuer itself) has committed “mismanagement”— ie., the first definition of “misconduct.”[7]
In sum, the district court should consider on remand whether the evidence establishes that Basin was required to restate its financial reports as a result of an intentional violation of any law or standard by any Basin employee acting within the course and scope of that employee’s agency.
* * *
Our holdings today with respect to both Rule 13a-14 and SOX 304 resolve difficult and complex issues of first impression. My colleagues would prefer to announce broad, but unclear rules and to leave for another day important questions — questions which will likely be determinative on remand of this case — about the precise scope of the rules we announce. While I am generally in accord with the notion that we should decide only that which is strictly necessary to decide, I’ disagree with my colleagues’ suggested course in this particular case.[8] What is culpably “false” and what constitutes “misconduct” are central to the disposition of this case. We have discretion to decide those issues to guide this case on remand. We ought to do so. Cf. Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (“The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.”).
It is well-established that where we “undertaken to decide [a] claim” that “is properly before th[is] court, [we] [are] not limited to the particular legal theories advanced by the parties, but rather retainf ] the independent power to identify and apply the proper construction of governing law.” Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); cf. Engquist v. Oregon Dep’t of Agric., 478 F.3d 985, 996 n.5 (9th *1124 Cir. 2007) (“[W]here an issue is purely legal, and the ... parties] would not be prejudiced, we can consider an issue not raised below.”), aff'd sub nom. Engquist v. Oregon Dep’t of Agr., 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).
Having properly undertaken to answer the broader question whether Rule 13a-14 requires CEOs and CFOs only to certify financial reports, or whether it requires them to do so truthfully, we act well within our discretion when we clarify precisely what we mean when say that Rule 13a-14 permits a cause of action against CEOs and CFOs who “falsely” certify a financial statement (regardless of the parties’ failure specifically to brief that nuance). Whether a cause of action includes a mental element is a purely legal question that, for reasons of judicial economy, we are far better situated than the district, court to resolve: Our mandate specifically directs the district court to apply our newly minted rule on remand, no prior precedent has addressed what it means for a certification to be “false” (reasonably so, as we have not previously recognized this cause of action), and this issue is likely to be determinative to the SEC’s claim.[9]
The same analysis applies with respect to our new interpretation of SOX 304. We announce today that CEOs and CFOs may be subject to disgorgement not only when they commit “misconduct,” but also when any agent of the issuer (acting within the course and scope of his agency) commits “misconduct” on behalf of the issuer. Given the lack of any definition of “misconduct” in the securities laws and regulations, or in our own precedent, the district court will be hard-pressed on remand to determine whether, for example, evidence of an accounting error qualifies as “misconduct” within the meaning of the rule we announce, absent some clarification regarding what “misconduct” for purposes of SOX 304 actually means. The clarification provided herein answers purely legal questions and in no way opines on the factual issues the district court must resolve in the first instance on remand {e.g., whether the SEC has adduced evidence sufficient to establish that Defendants committed misconduct on the record before the court).
Lastly, I suggest the panel bear in mind that, due to the district court’s improvident decision to proceed with a bench trial in the initial proceedings, our holding today vacates a host of factual and legal conclusions that were, unfortunately, the product of significant resource investment by all parties involved. To remand this case for application of new legal rules that are so woefully vague as to virtually guarantee another appeal to this Court and remand— after yet another significant resource investment — would be the paradigm of judicial inefficiency.
Subject to these additional clarifications, I concur in the panel’s opinion.

. Rule 13a-14 provides: "Each report, ... filed on Form 10-Q, Form 10-K [etc.] ... under Section 13(a) of the Act ... must include certifications ... as an exhibit to such report. Each principal executive and principal financial officer of the issuer, or persons performing similar functions, at the time of filing of the report must sign a certification.” 17 C.F.R. § 240.13a-14.

. That release commences with the following preamble: “As directed by Section 302(a) of the Sarbanes-Oxley Act of 2002, we are adopting rules to require an issuer’s principal executive and financial officers each to certify the financial and other information contained in the issuer’s quarterly and annual reports.” Id. at *1.

. My colleagues incorrectly suggest that our precedent leaves open the possibility that Section 13 may permit the imposition of liability on an individual defendant without a showing of mental culpability. See Maj. Op. at 1113 n.6. This misconception appears to stem from a misreading of a footnote in Ponce. The binding holding of Ponce in fact forecloses any argument that an individual could be held liable for a Section 13(a) without a showing that he acted with at least recklessness. In Ponce, we specifically held that a finding that an issuer had violated Section 13(a) “does not end our inquiry with respect to [an individual’s] liability,” because Section 13(a) applies only to issuers of securities. Ponce, 345 F.3d at 737. Ponce was a certified public accountant who had prepared and certified the issuer’s financial statements. Id. at 725-26. To hold Ponce liable, the SEC was required to establish the additional elements necessary for "aider and abettor liability.” Id. Accordingly, we instructed that “it must be found that ... (2) Ponce had knowledge of the [issuer's] primary violation and of his or her own role in furthering it; and (3) [that] Ponce provided substantial assistance in the primary violation.” Id. (emphasis added). Then, in a footnote, we queried whether knowledge was a necessary element of the "third prong” (i.e., the substantial assistance prong) of aider and abettor liability, noting that the SEC had assumed that it was. We cited "one [administrative] proceeding” in which the SEC had held that scienter was not a necessary requirement to establish a Section 13(a) violation. Id. at 737 n.10 (citing In the Matter of WSF Corp., 2002 WL 917293, at *3 (SEC, May 8, 2002)).
But the case we cited, In the Matter of WSF Corp., was about issuer liability — not aider and abettor liability. 2002 WL 917293, at *2, 6 (holding that an issuer, WSF Corporation, had violated Section 13(a) by virtue of its failure to file various mandatory annual and quarterly reports; holding that no showing of scienter on the part of WSF Corporation was required). Thus, the administrative proceeding we cited was, in fact, irrelevant to the question in Ponce — whether aider and abettor liability requires a showing of recklessness or knowledge. And even conceding that our dicta in Ponce created some ambiguity as to whether the "third prong” of aider and abettor liability incorporates a scienter requirement, Ponce unambiguously held that the second prong of a Section 13(a) aider and abettor theory requires the SEC to establish both “knowledge” of both “the primary violation” and the aider and abettor's "own role in furthering” that violation. In short, the only way to hold a CEO or CFO liable for a Section 13(a) violation is through aider and abettor liability, which requires knowledge of the falsity of the statement certified.
Thus, our precedent leaves no room for doubt that a CEO or CFO cannot be held liable for an issuer's violation of Section 13(a) without a showing that he acted with knowledge of such falsity. But cf. Levine, 950 F.2d at 1483 (suggesting that recklessness is sufficient). Accordingly, I would make clear that the SEC may not attempt to circumvent our precedent, or to take a position in this litigation contrary to its prior, official position with respect to officer liability for false certifications, simply because we today adopt a more expansive view of Rule 13a-14 as permitting yet another cause of action against CEOs and CFOs who falsely certify financial reports.

. "Section 10(b), the central antifraud provision of the Securities Exchange Act, 15 U.S.C. § 78j(b), makes it unlawful 'for any person, directly or indirectly':
To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
Rule 10b-5 further defines the conduct prohibited under Section 10(b), making it unlawful:
fa) [t]o employ any device, scheme, or artifice to defraud,
(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
S.E.C. v. Fehn, 97 F.3d 1276, 1289 (9th Cir. 1996) (quoting 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5).

. SOX 304 provides:
"If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for ... any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and ... any profits realized from the sale of securities of the issuer during that 12-month period.”
15 U.S.C. § 7243(a) (emphasis added).

. As explained fully in the panel’s opinion, Claims One through Six sought both legal and equitable relief, and the SEC was therefore entitled to a jury trial on those claims. See Maj. Op. at 1106 & n.2 (summarizing the seven causes of action brought by the SEC); Tull v. United States, 481 U.S. 412, 422, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). We have previously held, however, that a claim for disgorgement under SOX 304 is purely equitable, and therefore the SEC has no right to demand a jury trial for its claims seeking disgorgement pursuant to SOX 304. S.E.C. v. Jasper, 678 F.3d 1116, 1130 (9th Cir. 2012).

. The definition I propose would also be consistent with the handful of lower court decisions which have considered the circumstances under which CEOs may be subject to disgorgement under SOX 304. Compare, e.g., SEC v. Jenkins, 718 F.Supp.2d 1070, 1072, 1077 (D. Ariz. 2010) (holding that the SEC's allegations that a CFO, Chief Operating Officer, and other employees intentionally attempted to conceal losses from write offs of uncollected receivables would, if proven, establish "misconduct” for purposes of SOX 304), with e.g., SEC. v. Life Partners Holdings, Inc., 71 F.Supp.3d 615, 618, 625 (W.D. Tex. 2014) (finding no "misconduct” within the meaning of SOX 304 — notwithstanding a jury finding that the issuer had filed numerous false or misleading financial statements in violation of Exchange Act Rule 13(a) and related regulations — because those who prepared the inaccurate financial statements had reasonably relied on the issuer's outside auditor, Ernst & Young, in good faith, and the mistakes which ultimately required restatement and upon which the securities violations were predicated were discovered only after-the-fact and corrected).

. Even Chief Justice Roberts, a great proponent of judicial restraint, has acknowledged: "[Wlhile it is true that '[i]f it is not necessary to decide more, it is necessary not to decide more,’ ..., sometimes it is necessary to decide more. There is a difference between judicial restraint and judicial abdication.” Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 375, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (Roberts, C.J., concurring) (second alteration in original) (citation omitted).

. Because Basin did, in fact, restate information in some financial reports certified by Defendánts, there will be little dispute on rem'and that the certifications were in some sense “incorrect.” Thus, the critical question will likely be what more the SEC must show to establish that the certifications were also “false” — i.e., what mental state is required to make an incorrect certification a "false” one?